Kenneth REAMS *v.* STATE of Arkansas

CR 94-558                                          909 S.W.2d 324

Supreme Court of Arkansas
Opinion delivered November 6, 1995
[Petition for rehearing denied December 11, 1995.]

*Maxie G. Kizer*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Deputy Att'y Gen., Senior Appellate Advocate, for appellee.

TOM GLAZE, Justice. Kenneth Reams appeals from his capital felony conviction sentence for which he was sentenced to death. He raises seven points on appeal, but only four are properly preserved. Upon review, we conclude none of the points are meritorious.

We first consider Reams's suggestion that we conduct a proportional review. Such a review is not required. *Sasser v. State*, 321 Ark. 438, 902 S.W.2d 773 (1995); *Williams v. State*, 321 Ark. 344, 902 S.W.2d 767 (1995). However, this court has said that, in death penalty cases, it will continue to review the aggravating and mitigating circumstances presented to the jury and a harmless error review of the jury's findings. *Id.* In reviewing those circumstances, we point out that the jury unanimously found two aggravating and no mitigating circumstances. The two aggravating circumstances were that (1) Reams had committed

the murder in issue in order to realize a pecuniary gain and (2) he had previously committed another felony, an element of which was the use or threat of violence to another person or the creation of a substantial risk of death or serious physical injury to another person.

Here, Reams's own testimony supported the first aggravating circumstance. Reams, who was charged as an accomplice with Alford Goodwin in the murder of Gary W. Turner, testified that he and Goodwin planned to commit an aggravated robbery at a bank automatic teller machine because Goodwin said, "He needed the money for graduation." Reams admitted that he and Goodwin, who was armed with a .32 revolver, waited at a local automatic teller machine for someone to drive up so they could rob them. He further described how he and Goodwin approached Turner's vehicle at the machine; he also related Goodwin shot Turner. Regarding the jury's second aggravating circumstance, Reams was shown to have previously been convicted of two aggravated robbery offenses and these offenses, by their definition, reflect Reams had committed prior crimes involving the threat of violence to another. *See Whitmore* v. *State*, 296 Ark. 308, 756 S.W.2d 890 (1988); Ark. Code Ann. § 5-12-103(a) (Repl. 1993).

■ Concerning the review of mitigating circumstances, we note that there was some evidence of six mitigating circumstances, but the jury unanimously agreed that those mitigating circumstances did not exist.[1] Suffice it to say, the record supports the jury's unanimous findings that two aggravating circumstances existed beyond a reasonable doubt and no mitigating circumstances existed. To impose the death penalty, this court has held that a jury need only unanimously agree that one aggravating circumstance exists. *Dansby* v. *State*, 319 Ark. 506, 893 S.W.2d 331 (1995). Here, two were shown.

---

[1]The evidence considered but not unanimously found by the jury suggested the following: (1) the capital murder was committed while Reams was under extreme mental or emotional disturbance; (2) the capital murder was committed while Reams was acting under unusual pressures or influences or under the domination of another person; (3) Ream's youth at the time of his commission of the murder; (4) the murder was committed by another person and Reams was an accomplice and his participation was relatively minor; (5) Reams had no significant history of prior criminal activity; and (6) Reams suffered from borderline mental retardation.

In another point, Reams contends that, because of his mental retardation, his execution would violate state and federal guarantees against cruel and unusual punishment and deprive him of due process and equal protection of the law. Reams relies on Act 420 of 1993, now codified at Ark. Code Ann. § 5-4-618 (Repl. 1993), to support his argument that his mental retardation precludes the jury from imposing the death penalty sentence. His argument is without merit.

■■ Reams concedes that he is not entitled to the rebuttable presumption of mental retardation under the Act, since his intelligence quotient is above that 65 quotient prescribed by law. This may well be the reason Reams failed to raise the defense of mental retardation as an affirmative defense as is required by Act 420. *See* § 5-4-618(d)(1). In any event, he did not assert Act 420 as a defense prior to trial, and for this reason alone, Reams's argument must fail. While Reams mentions other constitutional arguments connected with his purported mental retardation, those arguments were not properly raised below, so we do not address those for the first time on appeal. *See Parker* v. *State*, 292 Ark. 421, 731 S.W.2d 756 (1987).

■ In a third point, Reams asserts that the trial court's submission of pecuniary gain to the jury as an aggravating circumstance in the penalty phase was an unconstitutional "double-counting" which violated the Eighth and Fourteenth Amendments' prohibition against cruel and unusual punishment. He argues in part that Arkansas's definition of capital murder does not sufficiently narrow the crime for which the death penalty can be imposed and that Arkansas's law, providing narrowing during the penalty stage only, fails to meet the Eighth Amendment requirements. The Supreme Court, the United States Eighth Circuit Court of Appeals and this court have rejected this "double-counting" and narrowing argument. *Lowenfield* v. *Phelps*, 484 U.S. 231 (1988); *Perry* v. *Lockhart*, 871 F.2d 1384 (8th Cir.); *cert. denied*, 493 U.S. 959 (1989); *Nooner* v. *State*, 322 Ark. 87, 907 S.W.2d 677 (1995); *Porter* v. *State*, 321 Ark. 555, 905 S.W.2d 835 (1995); *Cox* v. *State*, 313 Ark. 184, 853 S.W.2d 266 (1993); *Johnson* v. *State*, 308 Ark. 7, 823 S.W.2d 800, *cert. denied*, 112 S.Ct. 3043 (1992). We see no need to revisit or reconsider this issue, yet again.

■ In a fourth point, Reams states that he is black and the victim was white and that racial overtones were involved in the commission of the crime. He urges that, contrary to the holding in *Batson* v. *Kentucky*, 476 U.S. 79 (1986), the prosecutor here unconstitutionally used his peremptory strikes to exclude blacks from the jury. In *Rockett* v. *State*, 318 Ark. 831, 890 S.W.2d 235 (1994), this court set out the following required procedures when a *Batson* objection is raised:

> First, the defendant must make a prima facie case that racial discrimination is the basis of a juror challenge. In the event the defendant makes a prima facie case, the state has the burden of showing that the challenge was not based on race. Only if the defendant makes a prima facie case and the state fails to give a racially neutral reason for the challenge is the court required to conduct a sensitive inquiry.

This court has further held that, on appeal, the standard of review for reversal of a *Batson* ruling is whether the trial court's findings are clearly against the preponderance of the evidence. *Bradley* v. *State*, 320 Ark. 100, 896 S.W.2d 425 (1995).

■ Here, the trial court ruled that Reams made no prima facie case by showing racial discrimination was the basis of the prosecutor's juror challenges. In *Ward* v. *State*, 293 Ark. 88, 733 S.W.2d 728 (1987), this court held that a defendant may make a prima facie case by showing that (1) the totality of the relevant factors gives rise to an inference of discriminatory purpose, (2) the total or seriously disproportionate exclusion of negroes from the jury venires or (3) a pattern of strikes, or questions and statements by a prosecuting attorney during voir dire.

In this appeal, Reams cites *Franklin* v. *State*, 314 Ark. 329, 863 S.W.2d 268 (1993), in support of his argument that he made a prima facie case by objecting to the prosecutor's peremptory strike of the first venire person, Irma Johnson, who was black. Of course, no strike pattern or discriminatory purpose was evident merely because the first juror called and struck happened to be black. Nonetheless, the trial court assured Reams that, if a pattern developed later, it would require the prosecutor to provide a race-neutral explanation for striking Johnson. Reams

never later renewed his objection regarding Johnson. Contrary to Reams's suggestion, the *Franklin* decision is unhelpful here, because there, four other jurors had been voir dired when the first black juror was called and subsequently challenged by the state, and by the time the court ruled on the *Batson* objection, the jury was composed of only white jurors.

In sum, no strike pattern was shown when Johnson was struck by the state, nor did the state's questions asked of her reflect a racially discriminatory motive. In fact, had the prosecutor been requested to provide an explanation for his decision to peremptorily excuse Johnson, he undoubtedly would have related Johnson's concessions that her brother had been unsuccessfully prosecuted for robbery in 1988, her nephew had robbed a store in 1992 and her sister had been charged for a drug offense in federal court in 1992.

Reams next argues that the trial court erred in upholding the state's peremptory challenge of black venireman, Matthew Henry. At this stage of voir dire, the state had used four peremptory challenges, including the one striking Mr. Henry — two strikes involved black jurors, Johnson and Henry, and two involved white jurors. Again the trial court ruled no prima facie "pattern" of discrimination was exhibited by the prosecutor, but it also delved into the state's "race neutral" explanation for its peremptory strike of Henry.

Reams couches his argument on appeal in terms suggesting that the state's disparate treatment of venire members not only established a pattern, but also showed the specious nature of the state's explanation in striking Henry. Reams points out that the state purportedly wanted assurances from the potential jurors that they were aware of accomplice liability and could find an accomplice as guilty as the person who actually shot the victim. He argues white venire members Linda Messina, Carolyn Phillips and Dorothy Hodges had indicated the person who actually shot the victim should be punished more severely, but the state accepted them after each finally concluded that she could impose the death penalty, if accomplice liability was established. Reams asserts that, contrary to its treatment of Messina, Phillips and Hodges, the state struck Henry even though Henry indicated he could impose the death penalty if an accomplice was found guilty of capital murder.

Reams's argument breaks down when examining Henry's answer when voir dired by defense counsel. While he previously said that he could impose the death penalty, he steadfastly adhered to his belief that "[he] could consider the level of participation of the defendant or the role he played in the crime when it came to punishment if he could discern the difference in the state of mind." He further said, "I could do that if I could by some way see the difference in the state of mind and understand it or what is going to happen or whatever." After Henry's remarks, the prosecutor explained he wished to strike Henry because he believed Henry was of the opinion that, if Reams was not the shooter, he could not impose the death penalty.

The trial court voiced dissatisfaction with the state's explanation of striking Henry, and instead ruled Reams showed no prima facie case. While we agree with the trial court's ruling finding no discriminatory purpose or pattern, we also conclude the state's explanation was clearly race neutral.

■ Reams's *Batson* argument also included black venire member, Muriel M. Hayes, who the state struck because of her reservations about imposing the death penalty. Mrs. Hayes said, "I really do not want to be a person who would cause someone being put to death, I would not want a guilty conscience, I would not want to feel guilty, and I would not want to be a part of saying that this person gets the electric chair."[2] The prosecutor's explanation here was clearly based on something other than Ms. Hayes's race and without anything more, his reason offered in striking her must be deemed race neutral. *See Hernandez* v. *New York*, 500 U.S. 352 (1991). For the reasons above, we affirm the trial court's *Batson* rulings.

■ As previously mentioned, Reams argues three additional points on appeal, but those arguments were not argued or preserved below. His arguments are that (1) the jury did not adequately consider his youth (age 18 years) as a mitigating circumstance, (2) form 2, as a part of the verdict form, violated the Eighth and Fourteenth Amendments, and (3) jury members were

---

[2] Reams suggests Ms. Hayes was rehabilitated when she agreed she could consider the death penalty, but, at the same time she again stated that she would rather not do so.

given inadequate instructions on non-statutory mitigating evidence. Although we see no merit in these issues, it is unnecessary to discuss them further, since even in death penalty cases, a defendant must have raised the allegations of error at the trial court level by having made a specific, timely objection. *See Parker* v. *State*, 292 Ark. 421, 731 S.W.2d 756 (1987).

The record has been examined in accordance with Ark. Sup. Ct. R. 4-3(h), and it has been determined that there were no rulings adverse to Reams which constituted prejudicial error. Therefore, we affirm.