Sedric Maurice SIMPSON *v.* STATE of Arkansas

CR 98-423                                      6 S.W.3d 104

Supreme Court of Arkansas
Opinion delivered December 16, 1999

*Robert N. Jeffrey*, for appellant.

*Mark Pryor*, Att'y Gen., by: *C. Joseph Cordi, Jr.*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. Appellant Sedric Maurice Simpson was found guilty of capital murder for the shooting deaths of Wendy Pennington and Lena Sue Garner. Simpson was sentenced to death by lethal injection. He appeals his conviction, raising five points for reversal.

The sufficiency of the evidence is not challenged in this appeal, so a brief summary of the facts will suffice. In the early morning hours of June 20, 1997, the H & H Grocery in Holly Springs was robbed and the two women working there, Pennington and Garner, were shot and killed with a 12-gauge shotgun. About an hour later, Sedric Simpson hurriedly went to see Bernard Gregory and left a 12-gauge and some blood-covered money with him; Gregory later testified that, at this same time, he also saw blood on Simpson's hands. After seeing Gregory, Simpson went to the home of Frederick Wright in Sparkman and told Wright that he had just "offed two bitches." Simpson was later arrested at Wright's house. After being advised of his *Miranda* rights and taken to jail, Simpson signed a waiver-of-rights form and gave a statement implicating his co-defendant Ezekiel Harrison. The officers taking the statement said that Simpson did not appear to be under the influence of drugs or alcohol at the time. Later, Simpson's mother reported that two guns were missing from the trunk of the car that Simpson had been driving, so the Dallas County officers searched the car and seized

evidence from it. Simpson had taken the car, which actually belonged to his sister, from his mother's house without her knowledge or permission.

At the end of a three-day jury trial in May of 1998, Simpson was convicted of two counts of capital murder. The jury found three aggravating factors — (1) the murders were committed for the purpose of avoiding or preventing an arrest, (2) the murders were committed for pecuniary gain, and (3) Simpson caused the death of more than a single person in the same criminal episode — and no mitigating factors. Simpson was sentenced to death by lethal injection. On appeal, he raises five points, none of which has merit.

■ Simpson first argues that the trial court's submission of pecuniary gain to the jury as an aggravating circumstance in the penalty phase of his trial was an unconstitutional "double-counting" which violated his Eighth and Fourteenth Amendment rights. He asserts that, because pecuniary gain is both an element of the felony underlying his capital murder conviction and an aggravating circumstance justifying imposition of the death penalty, that element fails to narrow the class of crimes for which the death penalty may be imposed. The Supreme Court, the United States Eighth Circuit Court of Appeals, and this court have all rejected this "double-counting" and narrowing argument in numerous cases. *Lowenfield v. Phelps*, 484 U.S. 231 (1988); *Perry v. Lockhart*, 871 F.2d 1384 (8th Cir.), *cert. denied*, 493 U.S. 959 (1989); *Reams v. State*, 322 Ark. 336, 909 S.W.2d 324 (1995), *cert denied*, 519 U.S. 832 (1996); *Wainwright v. State*, 302 Ark. 371, 790 S.W.2d 420, *cert. denied*, 499 U.S. 913 (1990); *Starr v. State*, 297 Ark. 26, 759 S.W.2d 535 (1988), *cert. denied*, 489 U.S. 1100 (1989); *O'Rourke v. State*, 295 Ark. 57, 746 S.W.2d 52 (1988), *cert. denied*, 119 S. Ct. 1048 (1999). As we stated in *Reams*, we see no need to revisit or reconsider this issue yet again. *Reams*, 322 Ark. at 340, 909 S.W.2d at 327.

. For his second point on appeal, Simpson asserts that the trial court erred in denying his motion to exclude the death penalty on the basis of an arbitrary exercise of prosecutorial discretion. Simpson argues that there is nothing in the facts of his case to distinguish it from other cases in which the State has not sought the death penalty or has agreed to plea bargain for a sentence of less than death; therefore, he says, his Eighth and Fourteenth Amendment rights have been violated.

██ We have held that the choice of which charges to file against an accused is a matter entirely within the prosecutor's discretion. *State v. Vasquez-Aerreola*, 327 Ark. 617, 627, 940 S.W.2d 451, 455 (1997). Moreover, we have specifically concluded that even the decision to seek the death penalty is a matter within the discretion of the prosecutor, and we have held that this discretion does not render Arkansas's death-penalty statutes arbitrary and capricious. *Clines, Holmes, Richley, and Orndorff v. State*, 280 Ark. 77, 82, 656 S.W.2d 684, 686 (1983). Because this decision rests within the discretion of the prosecutor, an appellant must prove that the exercise of that discretion was arbitrary or capricious. *See Lee v. State*, 327 Ark. 692, 704, 942 S.W.2d 231, 237 (1997). Here, however, Simpson presented no evidence to this effect to the trial court, nor has he provided this court with anything other than general allegations that the prosecutor's discretion was exercised arbitrarily. Thus, there was no error in denying his motion to exclude the death penalty.

Simpson's third argument for reversal is that the trial court erred in denying his motion to suppress his custodial statement. He asserts that even though he was advised of his *Miranda* rights, his statement was given in an environment that was hostile, threatening, and coercive. The sheriff had told Simpson at the time of his arrest that he was "going to see [Simpson] fry" for killing the two women, and the uncle of one of the victims was present for part of Simpson's interview. Because of these circumstances, he argues that it was error for the trial court to allow his statement into evidence.

██ The difficulty with this argument, however, is that the trial court never allowed Simpson's statement to be introduced into evidence. Although Simpson attempted to lay a foundation and introduce the statement during the testimony of the officer who took it, the prosecutor objected on the basis of hearsay. The objection was sustained, and the statement was never admitted into evidence. Because Simpson's statement was never used at trial, he cannot demonstrate prejudice. *Hayes v. State*, 274 Ark. 440, 447, 625 S.W.2d 498, 502 (1981). In that case, Hayes argued that the court erred in finding that a statement was given voluntarily. However, because the statements were not introduced at trial, the court said, "we fail to perceive nor has appellant demonstrated how he was prejudiced by the non-use of these statements." *Id.*

Even assuming that Simpson had been able to demon-strate some kind of prejudice, the State has met its burden of showing by a preponderance of the evidence that the statement was voluntarily given. *Id.* at 445, 625 S.W.2d at 501. This court makes an independent determination based on the totality of circum-stances surrounding the statement, and we will not reverse a trial court's finding of voluntariness unless clearly against the preponder-ance of the evidence. *Id.* At the hearing on the suppression motion, five Dallas County officers testified that Simpson voluntarily signed the *Miranda* form and the waiver-of-rights form; several of them also testified that Simpson did not appear to be under the influence of drugs or alcohol at the time. Although Simpson testified that he felt coerced, the trial court found that he knowingly and voluntarily gave the statement. As in *Hayes*, it was for the trial court to resolve the credibility of the witnesses and any conflict in their testimony, *Hayes*, 274 Ark. at 446-47, 625 S.W.2d at 501, and that court's finding of voluntariness was not clearly against the preponderance of the evidence.

For his fourth point, Simpson asserts that the trial court erred in denying his motion to suppress evidence seized from the car he was driving the night of the murders. This argument must fail for the simple reason that Simpson had no standing to challenge the vehicle's search. An appellant must have standing to challenge a search on Fourth Amendment grounds because the rights secured by the Fourth Amendment are personal in nature, that is, he must have a legitimate expectation of privacy in the area to be searched. *Stanley v. State*, 330 Ark. 642, 644, 956 S.W.2d 170, 171 (1997) (citing *Dixon v. State*, 327 Ark. 105, 937 S.W.2d 642 (1997)). This court has repeatedly held that a defendant has no standing to ques-tion the search of a vehicle owned by another person. *Stanley*, 327 Ark. at 644, 956 S.W.2d at 171; *see also State v. Barter*, 310 Ark. 94, 833 S.W.2d 372 (1992). In order to establish a legitimate expecta-tion of privacy in an automobile owned by another person, a defendant must show that he gained possession of the vehicle from the owner or from someone who had authority to grant possession. *Stanley*, 327 Ark. at 644, 956 S.W.2d at 171; *Littlepage v. State*, 314 Ark. 362, 863 S.W.2d 276 (1993).

As discussed above, the car in this case belonged to Simp-son's sister, who had loaned it to her mother at the time of the murders. Not only did Simpson fail to show that he gained posses-

sion of the car from the owner, he admitted at trial that his mother did not know that he took the car that evening. Indeed, he did not even so much as ask her permission to take it. Because Simpson had neither a property interest nor a possessory one in the vehicle, he had no legitimate expectation of privacy in it. Accordingly, he failed to establish that he had standing to object to the vehicle's search.

For his final point on appeal, Simpson states that the trial court erred in denying his proffered mitigating circumstances as a jury instruction during the sentencing phase of his trial. During the sentencing phase of his trial, Simpson asked the trial court to submit to the jury verdict forms that included as mitigating circumstances the disposition of the charges of his co-defendant, Ezekiel Harrison, who pled guilty to two counts of second-degree murder and robbery and was sentenced to two twenty-year sentences. The trial court refused Simpson's request.

■ There was no error in the court's refusal for two reasons. First, the proffered verdict forms were misleading and confusing. Simpson stated that Harrison had been sentenced to twenty years for each murder, but failed to indicate whether the sentences were being served consecutively or concurrently, or whether Harrison had also been convicted of and sentenced for robbery. Because the proffered forms could have misled and confused the jury, the trial court did not err by refusing to submit them. *See Townsend v. State,* 308 Ark. 266, 273, 824 S.W.2d 821, 825 (1992).

■ Second, the disposition of Harrison's charges was not relevant to Simpson's punishment. Arkansas Code Annotated section 5-4-602(4) (Repl. 1997) provides in pertinent part:

> Evidence as to any mitigating circumstances may be presented by either the state or the defendant regardless of its admissibility under the rules governing admission of evidence in trials of criminal matters, *but mitigation evidence must be relevant to the issue of punishment,* including, but not limited to, the nature and circumstances of the crime, and the defendant's character, background, history, and mental and physical condition as set forth in § 5-4-605. [Emphasis added.]

Thus, to be admissible, evidence of mitigating circumstances must be relevant to the issue of the defendant's punishment. *McGehee v. State*, 338 Ark. 152, 992 S.W.2d 110 (1999).

The disposition of Harrison's charges, which Simpson sought to offer to the jury as a mitigating circumstance, had nothing to do with Simpson's character, record, background, history, condition, or the circumstances of his crime. This information was not relevant to the issue of Simpson's punishment, and the trial court therefore did not err in refusing to submit the proffered forms to the jury.

The record has been examined in accordance with Ark. Sup. Ct. R. 4-3(h), and it has been determined that there were no rulings adverse to Simpson which constituted prejudicial error. Therefore, we affirm.