Jack Gordon GREENE *v.* STATE of Arkansas

CR 96-362 37 S.W.3d 579

Supreme Court of Arkansas
Opinion delivered February 1, 2001
[Supplemental opinion on denial of rehearing
delivered March 8, 2001.* ]

---

* CORBIN, J., not participating.

528

*Arkansas Public Defender Commission,* by: *Dorcy K. Corbin,* for appellant.

*Mark Pryor,* Att'y Gen., by: *James R. Gowen, Jr.,* Ass't Att'y *Gen.,* for appellee.

R OBERT L. BROWN, Justice. This is the third appeal in this matter. In 1992, appellant Jack Gordon Greene was tried and convicted of the capital murder of Sidney Jethro Burnett and sentenced to death. On June 20, 1994, this court affirmed

Greene's conviction for capital murder, but we reversed his death sentence and remanded for resentencing. *Greene v. State*, 317 Ark. 350, 878 S.W.2d 384 (1994) (*Greene I*). We did so because the aggravating circumstance based on a judgment for a prior unrelated violent felony which had been relied on by the jury in sentencing Greene to death was reversed by the North Carolina Supreme Court. In 1996, Greene was again sentenced to death following a resentencing hearing. On November 5, 1998, this court considered Greene's appeal from this second death sentence, and we again reversed the sentence and remanded for resentencing. See *Greene v. State*, 335 Ark. 1, 977 S.W.2d 192 (1998) (*Greene II*). We did so because (1) the State had not offered proof that Greene's bad act in North Carolina constituted a felony under North Carolina law, and (2) Greene was entitled to a hearing relating to his objections to his mental evaluation.

On remand, Greene was again sentenced to death at a resentencing hearing that took place on June 30 and July 1, 1999. He now appeals and raises seven points for reversal. We hold that none of the points raised has merit, and we affirm the death sentence.

The facts leading to Greene's conviction for capital murder were fully described in *Greene I*. Suffice it to say that in 1991, Sidney Jethro Burnett and his wife, Edna, worked to help needy families through an organization named Ministries Aflame and befriended Greene and his wife. Burnett provided work for Greene and a home for the couple as well as funds for needed surgery. The Greenes had marital problems, and Donna Greene left her husband and moved to North Carolina. Greene followed her. Later, he returned to Arkansas and appeared to blame Edna Burnett for his wife's leaving him.

On July 23, 1991, Edna Burnett found her husband dead in her home in Johnson County. His hands and feet were tied, his mouth was taped, there was blood on his chest, and he was propped up against a couch.[1] It was subsequently determined by former medical examiner, Dr. Fahmy Malak, that he had been stabbed repeatedly, beaten on the head and back by a blunt instrument, shot in his chest and head, and his face was slashed from his ear to his mouth. Burnett had been shot by a .25 caliber pistol.

---

[1] In *Greene I*, we referred to Burnett being propped up against a chair, but photographs of his corpse show that he was positioned against the couch.

Three days later Greene was arrested in Oklahoma. He had a .25 caliber pistol in his possession. That pistol made the markings on the two shell casings found at the murder scene. Three days after his arrest, he was charged with capital murder for Burnett's death. He told Johnson County Sheriff Eddie King, who had traveled to Oklahoma to bring Greene back to Arkansas: "I'm tired of being treated like shit. I was going to take out people that fucked with me. It's like chaining up a dog and treating it like shit. Sooner or later it goes crazy." The jury trials which resulted in the first two death sentences followed in 1992 and 1996.

After receiving his second death sentence in 1996, a series of motions from Greene dealing with his waiver of an appeal to this court and his mental competency to do so ensued. *Greene v. State*, 326 Ark. 179, 929 S.W.2d 157 (1996) (*per curiam*) (motion to waive appeal equivocal; denied); *Greene v. State*, 326 Ark. 822, 933 S.W.2d 392(1996) (*per curiam*) (following second motion to waive appeal, matter remanded for competency determination); *Greene v. State*, 327 Ark. 511, 939 S.W.2d 834 (1997) (*per curiam*) (remanded for second competency hearing on basis first determination was insufficient); *Greene v. State*, 328 Ark. 218, 941 S.W.2d 428 (1997) (Greene's motion to dismiss appeal denied because Greene refused to cooperate in his mental health evaluation); *Greene v. State*, 329 Ark. 491, 949 S.W.2d 894 (1997) (*per curiam*) (motion to withdraw appeal and for writ of habeas corpus denied). After his third resentencing hearing in 1999, where he again received a death sentence, this court affirmed the trial court's determination that Greene was competent to waive appeal. *State v. Greene*, 338 Ark. 806, 1 S.W.3d 442 (1999) (*per curiam*).

We issued a writ of *certiorari* to the court reporter to prepare the record and the Arkansas Public Defender Commission petitioned as substitute counsel to present an appeal on Greene's behalf pursuant to *State v. Robbins*, 339 Ark. 379, 5 S.W.3d 51 (1999).

## I. *Mitigating and Victim-Impact Evidence*

For his first issue, Greene contends that the trial court erred in refusing to admit evidence offered by defense counsel as mitigating evidence or victim–impact evidence. The pertinent facts are that while on death row, Greene received a letter from Edna Burnett, the victim's wife, expressing her forgiveness of Greene for the murder and her desire that he be given a life sentence rather than

the death penalty. At the resentencing hearing in July 1999, defense counsel sought to introduce this testimony, either by actual letter or through the live testimony of Edna Burnett. The trial court ruled that the letter was inadmissible. The court also ruled that Mrs. Burnett could not testify in person that in her opinion Greene should be sentenced to life in prison or about her forgiveness of him for his crime.

*a. Mitigating Evidence*

Greene first urges that the State cannot prevent a jury from considering relevant mitigating evidence offered in support of a sentence less than death and cites us to *Eddings v. Oklahoma,* 455 U.S. 104 (1982), for that principle. He further argues that his right to present relevant evidence to the jury, which could cause the jury not to impose the death penalty, is constitutionally guaranteed. *See McCleskey v. Kemp,* 481 U.S. 279 (1987). He emphasizes that the venire persons were asked in *voir dire* if forgiveness by the family would make a difference to them in determining the appropriate punishment, and four members of the panel, including two who became jurors, said that the victim's family's forgiveness would either be important or might matter to them. Finally, Greene directs our attention to Ark. Code Ann. § 5-4-605 (Repl. 1997), for the proposition that the listed mitigating circumstances are not meant to be exclusive. He points us to our language in a recent case where we said there "are virtually no limits placed on the relevant mitigating evidence that a defendant may introduce." *Lee v. State,* 327 Ark. 692, 703, 942 S.W.2d 231, 236 (1997).

█ We are not persuaded that Edna Burnett's forgiveness and her opinion that life imprisonment is the appropriate penalty constitute *relevant* mitigating evidence. *Lee v. State, supra.* The apposite statute requires that "[M]itigation evidence must be relevant to the issue of punishment." Ark. Code Ann. § 5-4-602(4) (Repl. 1997); *see also Simpson v. State,* 339 Ark. 467, 6 S.W.3d 104 (1999). This court has observed that Ark. Code Ann. § 5-4-602 does not "totally open the door to any and all matters simply because they might conceivably relate to mitigation[.]" *McGehee v. State,* 338 Ark. 152, 174, 992 S.W.2d 110, 123 (1999) (quoting *Johnson v. State,* 308 Ark. 7, 27, 823 S.W.2d 800, 811, cert denied, 505 U.S. 1225 (1992)).

■ This court has held that relevant mitigating evidence is limited to evidence that concerns the "character or history of the offender or the circumstances of the offense." *See Camargo v. State,* 337 Ark. 105, 113, 987 S.W.2d 680, 685 (1999) (quoting *Sheridan v. State,* 313 Ark. 23, 852 S.W.2d 772 (1993); *see also* Ark. Code Ann. § 5-4-602(4) (Repl. 1997). More on point, the Tenth Circuit Court of Appeals has spoken precisely on the issue of personal opinions of the appropriate sentence. See *Robison v. Maynard,* 829 F.2d 1501 (10th Cir. 1987). In *Robison,* the court stated:

> An individual's personal opinion of how the sentencing jury should acquit its responsibility, even though supported by reasons, relates to neither the character or record of the defendant nor to the circumstances of the offense. Such testimony, at best, would be a gossamer veil which would blur the jury's focus on the issue it must decide.

> Moreover, allowing any person to opine whether the death penalty should be invoked would interfere with the jury's performance of its duty to exercise the conscience of the community ....

> In short, we cannot agree with Petitioner's contention that any testimony a defendant believes would make the jury less likely to return a death verdict must be allowed to satisfy the dictates of federal due process. The broad range of facts admissible under the *Eddings* delineation of mitigating evidence must focus on *the persona of the defendant or on the fabric of the crime of which he has been convicted.*

829 F.2d 1505. (Emphasis added.)

In 1994, the Alabama Court of Criminal Appeals considered an issue very similar to the issue raised in the case at hand. *See Barbour v. State,* 673 So. 2d 461 (Ala. Crim. App. 1994). In *Barbour,* the victim's brother wrote a letter to the trial court requesting that the defendant be sentenced to life in prison rather than death. The prosecutor argued that the holding by the United States Supreme Court in *Payne v. Tennessee,* 501 U.S. 808 (1991), prohibited the admission of this letter. The trial court concluded that the prosecutor was essentially correct and stated that the *Payne* court did not address the issue of whether a request for leniency by the victim's family can properly be considered as a mitigating circumstance. The trial court further noted that the United States Supreme Court in *Eddings v. Oklahoma, supra,* held that a jury in capital cases must be permitted to consider *any* relevant mitigating factor touching the

defendant's character and record. *Barbour*, 673 So.2d at 468. The trial court then adduced *Robison v. Maynard, supra,* and two other cases that hold that evidence of a victim's family member's opinion regarding an appropriate or desirable sentence is not admissible as relevant mitigating evidence. *See Floyd v. State,* 497 So. 2d 1211 (Fla. 1986) (court refused to allow testimony of murder victim's daughter that she and the victim opposed capital punishment as mitigating evidence; the Florida Supreme Court affirmed); *Ex Parte McWilliams,* 640 So. 2d 1015 (Ala. 1993) (defendant's Eighth Amendment rights were violated if trial court considered victim's family members' characterizations or opinions of the appropriate punishment). The Alabama Court of Criminal Appeals agreed with the trial court and cited with approval *McWilliams v. State,* 640 So.2d 1015, 1017 (Ala. 1993), which stated that victim impact statements do not include characterizations or opinions about a defendant.

 We conclude that *Robison v. Maynard, supra,* and its progeny are persuasive. Opinions on the appropriate sentence from family members of the victim would be confusing to the jury and interfere with its role. There is, too, the danger that opinions from family members of the victim would be calculated to incite an arbitrary response from the jury. Furthermore, it would fail the test of evidence relating either to the character of the defendant or to the circumstances of the offense. See Ark. Code Ann. § 5-4-602(4) (Repl. 1997); *Camargo v. State, supra.* We affirm the trial court on this point.

### b. Victim-Impact Evidence

Greene next contends that Edna Burnett's forgiveness testimony and recommended sentence constitute victim-impact evidence under *Payne v. Tennessee, supra,* where the Court considered previous decisions on the admissibility of victim-impact evidence and concluded that this testimony was admissible. This court adopted the same view in *Noel v. State,,* 331 Ark. 79, 960 S.W.2d 439 (1998), where we held that the impact of a murder on the victim's family is admissible. Greene emphasizes, however, that there is no language by this court or by the United States Supreme Court that limits victim impact to testimony that will increase the likely sentence. Because of this, he urges that he should be allowed to introduce evidence from a victim's family member that may decrease a sentence as well.

■ Again, the issue comes down to whether the proffered evidence from Edna Burnett is *relevant*. We agree that the seminal case in the area of victim-impact evidence is *Payne v. Tennessee, supra,* where the United States Supreme Court overruled past precedent and held that the Eighth Amendment to the United States Constitution did not erect a *per se* bar against states providing for the admission of victim-impact evidence. Arkansas followed suit and enacted legislation permitting victim-impact evidence as relevant evidence. Ark. Code Ann. § 5-4-602(4) (Repl. 1997). This court has said that proposed victim-impact evidence passes the test of relevancy if it counteracts mitigating evidence and shows that the victim's death represented a unique loss to society and exacted a human toll on the victim's family. *Noel v. State, supra* (citing *Payne v. Tennessee, supra*). This court further explained in *Kemp v. State,* 335 Ark. 139, 983 S.W.2d 383 (1998), that the jury could consider victim-impact evidence at the same time it considers mitigating evidence introduced by the defendant during the sentencing phase of the trial. *Id.* at 141 (citing *Payne v. Tennessee, supra*). In recognizing that there were virtually no limits placed on relevant mitigating evidence that a defendant may introduce on his behalf, we noted that the State could legitimately conclude that the impact of the murder on the victim's family is relevant to the jury's decision as to whether the death sentence should be imposed. *Id.* at 142, (citing *Payne v. Tennessee, supra*). Yet, this court has never sanctioned introduction of opinions from the victim's family about their feelings or what the appropriate penalty should be as victim-impact evidence. And we are aware that other jurisdictions have not found such evidence to be admissible. *See, e.g., United States v. McVeigh,* 153 F.3d 1166, 1217 (10th Cir. 1998) (information concerning victim's family member's opinions about crime, defendant, and appropriate sentence inadmissible).

■ We conclude that penalty recommendations from family members of the victim are not relevant as victim-impact evidence. Certainly, the penalty recommendation from Edna Burnett that Greene proposes would not counteract mitigating evidence or show the human cost of the murder on the victim's family. But in addition, if this court permitted forgiveness and penalty recommendations as victim-impact evidence, then it stands to reason that it must also allow any evidence of nonforgiveness by the victim's family and any recommendation of a harsher sentence such as death. We cannot condone either brand of testimony as both

would interfere with and be irrelevant to a jury's decision on punishment. Indeed, such testimony would have the potential or reducing a trial to "a contest of irrelevant opinions." *See Robison v. Maynard*, 829 F.2d at 1504. We affirm the trial court on this point.

## II. Prosecutor's Closing Argument

Greene's next point involves the prosecutor's closing argument where he said:

> I'll tell you and I've thought about this and I worry about this; but I'll tell you why the aggravating circumstances in this case justify the death penalty and it's because *Mr. Burnett was a sixty-nine year old man doing no wrong, living out his life and he was a member of our community. He was a member —*

(Emphasis added). Greene's counsel objected and argued that the victim's station in life was not an aggravating circumstance. He then asked for a declaration of a mistrial. The trial court refused to declare a mistrial, but at defense counsel's request, the trial court admonished the jury to disregard the prosecutor's statement:

> Ladies and Gentlemen, part of the argument this Court has sustained with respect to what [defense counsel] has objected to about Mr. Burnett being a sixty-nine year old man. The argument needs to pertain to the aggravating circumstance, which is not age qualified and so you will disregard that comment of counsel. All right.

Greene now argues on appeal that this remark was calculated to inflame the jurors' passions and deprive him of his right to a fair and impartial trial. He further maintains that although the trial court gave the admonishment to the jury, it was insufficient to remove the prejudicial effect of the argument. Thus, he claims that a mistrial should have been granted.

Initially, we do not read the prosecutor's argument as saying that Burnett's age and character constituted an aggravating circumstance. We read the argument as saying that the victim was elderly and a member of the community and that the aggravating circumstance of an especially cruel or depraved murder should apply. *See* Ark. Code Ann. § 5-4-604(8)(A) (Repl. 1997). Of course, the prosecutor's argument was truncated by the objection. In any event, the trial court admonished the jury to disregard the comment and that cured, in our minds, any confusion on this point. *See*

*King v. State*, 298 Ark. 476, 769 S.W.2d 407 (1989). Moreover, defense counsel requested the admonishment to the jury after his motion to declare a mistrial was denied. Counsel, accordingly, received the alternative relief requested.

 Under these circumstances, we cannot say that the trial court abused its discretion in refusing to declare a mistrial and in admonishing the jury.

### III. Use of Testimony From Previous Trials

Greene next argues that the use of Dr. Fahmy Malak's video-taped deposition from the guilt phase of the first trial in 1992 and the transcribed testimony of Edna Burnett from the 1996 resentencing hearing violated Arkansas Rule of Evidence 804(b)(1). That subsection reads:

> (b) *Hearsay Exceptions.* The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> (1) *Former testimony.* Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

There was no proof presented, according to Greene, that either Dr. Malak or Edna Burnett was unavailable for the resentencing hearing in 1999. He contends that the essential requirement of this rule of evidence was not met for these two witnesses.

The State responds that Ark. Code Ann. § 5-4-616(a)(4) (Repl. 1997), is directly on point:

> (4) All exhibits and a transcript of all testimony and other evidence properly admitted in the prior trial and sentencing shall be admissible in the new sentencing proceeding; additional relevant evidence may be admitted including testimony of witnesses who testified at the previous trial[.]

Greene counters that there is a direct conflict between this court's Rule of Evidence 804(b)(1) and § 5-4-616(a)(4), and that when such a conflict occurs, this court's rules "remain supreme." *State v. Sypult,* 304 Ark. 5, 7, 800 S.W.2d 402, 404 (1990).

■ We disagree with Greene that this case presents a *Sypult* issue. Section 5-4-616(a)(4) is limited specifically to resentencing in criminal trials whereas our rule of evidence applies to all proceedings whether civil or criminal. The General Assembly clearly viewed resentencing hearings, following reversal of the initial sentence and remand, to be special proceedings which warranted a more specialized standard for the admission of previous testimony transcribed at the prior trial. We do not view the primary purpose and effectiveness of Rule 804(b)(1) to be compromised by § 5-4-616(a)(4), and that is the test under *State v. Sypult, supra.*

■ Greene also asserts that notice to him that the former testimony of Dr. Malak and Edna Burnett would be used was untimely. Both transcriptions of prior testimony were not given to him until the morning of the trial which, he argues, denied him his right to a fair trial. Greene is not persuasive on this point. He should have known of the existence of § 5-4-616(a)(4) regarding prior testimony. And, equally as important, he had the right under Ark. R. Crim. P. 17.1, after being advised that Dr. Malak and Edna Burnett would be witnesses in the Disclosure of Aggravating Circumstances, to inquire as to whether a videotaped deposition or previously transcribed testimony would be used pursuant to the statute. This he failed to do.

■ ■ Finally, we give little credence to Greene's contention that Dr. Malak's deposition testimony in 1992 was used in the guilt phase of the trial rather than the penalty phase, and that this somehow makes a difference. Dr. Malak did testify about whether Burnett was alive when his hands and feet were tied, when he was struck by a blunt instrument, when he was knifed, and when he was shot in the chest. This testimony was of paramount importance for purposes of a resentencing hearing and for the aggravating circumstance of a murder committed in an especially cruel or depraved manner. Nor do we agree that Edna Burnett's transcribed testimony from the 1996 resentencing hearing about finding her husband's dead body had no relevancy to the aggravator of especially cruel or depraved murder as Greene maintains. We fail to see, however, where this precise issue was raised to the trial court at the 1999 hearing, and we will not address it.

There was no reversible error based on these issues raised by Greene.

## *IV. Prejudicial Sentencing Comment*

Greene next contests a comment made by the prosecuting attorney regarding the potential for Greene's release should he be sentenced to life in prison without the possibility of parole. The sequence of events and the colloquy between the judge and counsel follows:

> DEFENSE·COUNSEL: He's exhibited remorse for the death of Sydney Burnett. ... I think Mr. Wilson argued that, "Well, he's in prison over this thing now." Well, he's in prison. He's not getting out. He's never getting out of Tucker Maximum Security Unit at Tucker, Arkansas.
>
> PROSECUTOR: Judge, I'm going to object to that. That's misleading to the Jury.
>
> THE COURT: The Jury has heard the evidence. If Counsel misquotes the evidence, they can disregard it.
>
> PROSECUTOR: I'm talking about the situation about not getting out of the penitentiary. That's not the law and it's misleading.
>
> THE COURT: Well, I'll sustain that.
>
> PROSECUTOR: Thank you, sir.
>
> DEFENSE COUNSEL: Well, I would submit then that the only way he would ever get out would be a Governor's Pardon, if that helps Mr. Prosecutor Wilson.
>
> PROSECUTOR: It doesn't. The law is clear that he may be released pursuant to commutation, pardon or reprieve of the Governor.
>
> THE COURT: That's correct.
>
> PROSECUTOR: Thank you, sir.

Greene's counsel made no objection to this colloquy but now contests the prosecutor's summary of the law for the first time on appeal. As authority, counsel cites *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980), and directs our attention to the exception to our contemporaneous rule relating to a trial court's duty to intervene and correct a serious error. Absent the trial court's intervention, Greene claims that he was highly prejudiced.

■ We disagree that the trial court had a duty to step in under *Wicks*, because in our view no serious error was made. Indeed, the prosecutor correctly quoted the law. The apposite statute reads:

> A person sentenced to life imprisonment without parole shall be remanded to the custody of the Department of Correction for imprisonment for the remainder of his life and shall not be released except pursuant to commutation, pardon, or reprieve of the Governor.

Ark. Code Ann. § 5-4-606 (Repl. 1997). This point has no merit.

### V. Insufficient Evidence of Aggravator

The sole aggravating circumstance submitted to the jury in the 1999 resentencing was that the murder was committed "in an especially cruel or depraved manner." Ark. Code Ann. § 5-4-604(8)(A) (Repl. 1997). To establish this aggravator, the State had the burden to prove beyond a reasonable doubt the following:

> (B)(i) For purposes of this subdivision (8), a capital murder is committed in an especially cruel manner when, as part of a course of conduct intended to inflict mental anguish, serious physical abuse, or torture upon the victim prior to the victim's death, mental anguish, serious physical abuse, or torture is inflicted.
>
> (a) "Mental anguish" is defined as the victim's uncertainty as to his ultimate fate.
>
> (b) "Serious physical abuse" is defined as physical abuse that creates a substantial risk of death or that causes protracted impairment of health, or loss or protracted impairment of the function of any bodily member or organ.
>
> (c) "Torture" is defined as the infliction of extreme physical pain for a prolonged period of time prior to the victim's death.
>
> (C) For purposes of this subdivision (8), a capital murder is committed in an especially depraved manner when the person relishes the murder, evidencing debasement or perversion, or shows an indifference to the suffering of the victim and evidences a sense of pleasure in committing the murder[.]

Ark. Code Ann. § 5-4-604(8)(B)(i) and (C) (Repl. 1997).

Greene contends that the record is devoid of any evidence that Burnett actually endured mental anguish, abuse or torture. He claims that the only evidence of such factors is the deposition testimony of Dr. Malak that appellant argues should not have been admitted. But even considering Dr. Malak's testimony, he urges that it is equally plausible that Burnett was immediately rendered unconscious by a blow to the back of the head and was never subject to mental anguish, serious physical abuse, or torture. Furthermore, Greene argues that there was no evidence of Greene's state of mind to prove that the murder was committed "in an especially depraved manner."

▆▆▆ The State's first rebuttal to this point is that this issue was decided in *Greene I* and that law of the case applies. *See Camargo v. State*, 337 Ark. 105, 987 S.W.2d 680 (1999). However, the issue in *Greene I* was whether the "especially cruel or depraved" instruction was properly presented to the jury. If there is evidence of the aggravator, however slight, the matter should be submitted to the jury. *Ford v. State*, 276 Ark. 98, 633 S.W.2d 3, *cert. denied* 459 U.S. 1022 (1982). In this appeal, the issue raised by Greene is whether there is substantial evidence that the State proved the aggravator beyond a reasonable doubt. *See Willett v. State*, 335 Ark. 427, 983 S.W.2d 409 (1998); *see also,* Ark. Code Ann. § 5-4-603 (Repl. 1997). The burden of proof required for an instruction and for sufficient proof of the aggravator is altogether different. We will not apply the doctrine of law of the case for a determination of this issue.

▆▆▆ ▆▆▆ Nevertheless, we agree with the State that Dr. Malak's testimony substantially proves a depraved intent on the part of Greene. We further agree that intent must usually be inferred from the circumstances surrounding the killing. *See Willett v. State, supra; Russey v. State*, 322 Ark. 786, 912 S.W.2d 420 (1995). Dr. Malak testified that Burnett was alive when his hands and feet were tied, when he was kicked and stabbed, when he was shot in the chest, and when his face was cut from mouth to ear. This easily qualifies as substantial evidence of the aggravating circumstance. *See Jones v. State*, 340 Ark. 390, 10 S.W.3d 449 (2000); *see also McGehee v. State*, 338 Ark. 152, 992 S.W.2d 110 (1999). We affirm the trial court on this point.

*VI.* Voir Dire *on Death Penalty*

■ For his final point, Greene contests the prosecutor's question on *voir dire* of whether the prospective juror could "impose" the death penalty. The correct question, according to Greene, was whether the prospective juror could "consider" the death penalty after weighing all the facts. We fail to discern a significant distinction between questioning about *imposition* of the death penalty and *consideration* of the death penalty. To the extent Greene is objecting to a death-qualified jury, we have recently rejected that argument as has the United States Supreme Court. *See Williams v. State*, 338 Ark. 97, 991 S.W.2d 565 (1999); *see also Lockhart v. McCree*, 476 U.S. 162 1986).

■ In his reply brief, Greene is more precise in his argument and contends that a juror, Mrs. Dodge, was improperly excused for cause because she said she could not sign a verdict form assessing the death penalty. Greene cites us to the case of *Witherspoon v. State*, 391 U.S. 510 (1968). Ironically, though, he quotes from a footnote in that case that a prospective *venire* person cannot be "irrevocably committed against the death penalty regardless of the facts." 391 U.S. at 523, n. 21. That is precisely what the trial court found to be the case with respect to Mrs. Dodge. There was no abuse of discretion by the trial court.

### VII. Rule 4-3(h) Review

The record has been reviewed in accordance with Ark. Sup. Ct. R. 4-3(h), and no reversible error has been found.

Affirmed.

CORBIN, J., not participating.

SUPPLEMENTAL OPINION
ON DENIAL OF REHEARING
MARCH 8, 2001

37 S.W.3d 579

*Arkansas Public Defender Commission*, by: *Dorcy K. Corbin*, for appellant.

*Mark Pryor*, Att'y Gen., by: *James R. Gowen, Jr.*, Ass't Att'y Gen., for appellee.

R OBERT L. BROWN, Justice. Appellant petitions for rehearing on the issue of the proffered sentencing and forgiveness statements made by the victim's spouse. This is a reargument, and we deny the petition.

Appellant Greene points out, in addition, that he rescinded his waiver of appeal in a communication with his trial attorney on December 2, 1999, and that, subsequently, he asked that the Arkansas Public Defender Commission be substituted as his counsel on appeal. We agree with appellant Greene on this matter and issue this supplemental opinion to acknowledge that the original opinion is in error when it states that the Arkansas Public Defender Commission is representing appellant Greene as part of mandatory review pursuant to *State v. Robbins*, 339 Ark. 379, 5 S.W.3d 51 (1999).

CORBIN, J., not participating.