Sedric Maurice SIMPSON *v.* STATE of Arkansas

CR 02-872                                    138 S.W.3d 671

Supreme Court of Arkansas
Opinion delivered December 11, 2003

*David W. Talley, Jr.*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Joseph V. Svoboda*, Ass't Att'y Gen., for appellee.

Tom Glaze, Justice. Jurisdiction of this Rule 37.5 appeal is in this court pursuant to Ark. Sup. Ct. R. 1-2(a)(2) and (7). This is a criminal case in which the death penalty was imposed, and it is a second appeal following Sedric Simpson's direct appeal, which was decided by this court. *See Simpson v. State*, 339 Ark. 467, 6 S.W.3d 104 (1999).

Appellant Sedric Simpson was convicted of capital murder in the June 20, 1997, shooting deaths of Wendy Pennington and Lena Sue Garner; his conviction was affirmed by this court in *Simpson v. State*, 339 Ark. 467, 6 S.W.3d 104 (1999). The facts of that case were set out as follows:

> In the early morning hours of June 20, 1997, the H & H Grocery in Holly Springs was robbed and the two women working there, Pennington and Garner, were shot and killed with a 12-gauge shotgun. About an hour later, Sedric Simpson hurriedly went to see Bernard Gregory and left a 12-gauge and some blood-covered money with him; Gregory later testified that, at this same time, he also saw blood on Simpson's hands. After seeing Gregory, Simpson went to the home of Frederick Wright in Sparkman and told Wright that he had just "offed two bitches." Simpson was later arrested at Wright's house. After being advised of his *Miranda* rights and taken to jail, Simpson signed a waiver-of-rights form and gave a statement implicating his co-defendant Ezekiel Harrison. . . . Later, Simpson's mother reported that two guns were missing from

the trunk of the car that Simpson had been driving, so the Dallas County officers searched the car and seized evidence from it.

*Simpson*, 339 Ark. at 469-70.

After this court affirmed his convictions and death sentence, Simpson filed a petition for postconviction relief pursuant to Ark. R. Crim. P. 37.5. In his petition, Simpson argued that his trial counsel was ineffective in six different respects. Following a hearing, the trial court denied relief on each of the six allegations raised in Simpson's Rule 37 petition. On appeal, he argues only two of those points: (1) his counsel failed to have the store's cash register drawer examined to determine if the fingerprints of Ezekiel Harrison, a co-defendant, were present on the drawer; and (2) counsel failed to have the store's gas pumps analyzed for fingerprints.

On appeal from a trial court's ruling on Rule 37 relief, we will not reverse the trial court's decision granting or denying post conviction relief unless it is clearly erroneous. *Kemp v. State*, 347 Ark. 52, 60 S.W.3d 404 (2001); *Davis v. State*, 345 Ark. 161, 44 S.W.3d 726 (2001). A finding is clearly erroneous when, although there is evidence to support it, the appellate court after reviewing the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Id.*

To prevail on any claim of ineffective assistance of counsel, the petitioner must show first that counsel's performance was deficient. *Andrews v. State*, 344 Ark. 606, 42 S.W.3d 484 (2001); *Thomas v. State*, 322 Ark. 670, 911 S.W.2d 259 (1995). The petitioner first must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment. *Id.* Second, the petitioner must show that the deficient performance prejudiced the defense, which requires a showing that counsel's errors were so serious as to deprive the petitioner of a fair trial. *Id.* Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Id.* The petitioner also must show that there is a reasonable probability that, but for counsel's errors, the factfinder would have had a reasonable doubt respecting guilt in that the decision reached would have been different absent the errors. *Id.*; *Huls v. State*, 301 Ark. 572, 785 S.W.2d 467 (1990). A reasonable

probability is a probability sufficient to undermine confidence in the outcome of the trial. *Strickland v. Washington*, 466 U.S. 668 (1984); *Thomas v. State*, 322 Ark. 670, 911 S.W.2d 259 (1995).

For his first argument on appeal, Simpson argues that his trial counsel was ineffective for failing to have a fingerprint analysis done on the cash register drawer that was stolen from the convenience store. At trial, Ezekiel Harrison testified that he and Simpson had been driving around and smoking crack cocaine all night, and they arrived at the convenience store around 4:30 in the morning. Harrison stated that Simpson began pumping gas into the car; Simpson then went inside the store, while Harrison continued pumping gas. When Harrison had pumped $11.00 of gas, he got back in the car and reached for a rock of crack cocaine; at that point, he heard a gunshot. Harrison looked down, and the shotgun that had been in the car earlier was missing. He then heard another shot, and when he looked up, he saw Simpson coming out of the store with a cash drawer in his hand and the shotgun under his arm. As they drove off, Simpson handed Harrison the cash drawer and told him not to "mess with none of the money." When they reached a bridge, Simpson pulled over, removed the money from the drawer, and told Harrison to throw the drawer off of the bridge.

Simpson also testified at trial, and related a markedly different version of events than the one given by Harrison. Simpson stated that Harrison suggested they "hit a lick." Simpson claimed that he and Harrison went to the convenience store to fill up one of the car tires with air. As Simpson was airing up the tire, an eighteen-wheeler passed by; as it did, Simpson said, he heard two "booms," and thought that the truck had blown two tires. At that point, Harrison came out of the store with the cash drawer and told Simpson to drive.

Kenneth King, a latent fingerprint examiner with the Arkansas State Crime Laboratory, testified that he lifted latent fingerprints from a 12-gauge shotgun casing, a 12-gauge shotgun, two shotgun shells, a passenger window, and some money. He was not, however, able to match those prints to any particular individual; specifically, he said, he was unable to tie any of the prints to Simpson or Harrison. King also testified that people do not leave fingerprints every time they touch something, and even if prints had been left, a latent print "is a very delicate thing most of the time and it is susceptible to being wiped away if you're not careful

with it." On cross-examination, King agreed again that, of the prints that he had that were satisfactory for comparison purposes, none of them matched Simpson's prints.

In this appeal, Simpson asserts that the cash register drawer was not examined for prints. He argues that the presence of Ezekiel Harrison's fingerprints on the drawer would not necessarily make him the perpetrator, but Simpson claims the presence of Harrison's fingerprints on the register and the absence of [Simpson's] fingerprints would have seriously discredited Harrison's version of who actually went into the store to rob the store, and who murdered the women. Simpson contends that the fingerprint evidence would have significantly supported his trial testimony.

■ This court has held that the failure to offer proof that exculpatory evidence could have been obtained through a fingerprint analysis precludes Rule 37 relief. See Jenkins v. State, 348 Ark. 686, 75 S.W.3d 180 (2002). Additionally, we have held that when a petitioner for postconviction relief fails to show what the omitted testimony was and how it could have changed the outcome of his case, we will not grant postconviction relief for ineffective assistance of counsel. Wooten v. State, 351 Ark. 241, 91 S.W.3d 63 (2002); Pyle v. State, 340 Ark. 53, 8 S.W.3d 491 (2000). Here, Simpson did not conduct or offer any fingerprint analysis, either at trial or at his Rule 37 hearing, to show what evidence such testing might have proven. Therefore, because he failed to offer proof that any allegedly exculpatory evidence could have been obtained by further fingerprint testing, he cannot meet the prejudice prong of the Strickland test.

■ Further, as the trial court noted, both Harrison and Simpson testified that they handled the cash drawer; thus, even if additional tests had been performed, that evidence would only have been cumulative to Harrison's admission that he handled the drawer. The omission of cumulative evidence does not deprive the defense of vital evidence. Dansby v. State, 350 Ark. 60, 84 S.W.3d 857 (2002); Coulter v. State. 343 Ark. 22, 31 S.W.3d 826 (2000); Helton v. State, 325 Ark. 140, 924 S.W.2d 239 (1996). Finally, even Simpson admits in his brief that, at best, evidence of Harrison's fingerprints on the drawer would only have cast doubts on Harrison's credibility. However, it is the sole province of the jury to determine a witness's credibility, as well as the weight and value of his testimony. Nelson v. State, 344 Ark. 407, 39 S.W.3d 791

(2001). Even if the jury had heard evidence of Harrison's fingerprints on the cash drawer, there is no indication that the jury would have resolved this credibility determination in Simpson's favor. *Id.* at 414. Therefore, Simpson has failed to demonstrate that the outcome of the trial would have been different if his trial counsel had submitted evidence at trial that Harrison's fingerprints were on the cash drawer.

Simspon's second argument on appeal is very similar to his first; in this point, he contends that trial counsel was also ineffective for failing to have the gas pumps at the convenience store examined for fingerprints. Again, he claims that the presence of his fingerprints on the pumps, combined with the absence of Harrison's fingerprints, "would have seriously discredited Harrison's version of who actually went into the store and significantly supported [Simpson's] testimony." On this point, the trial court noted that Simpson's trial attorney was not appointed until several days after the event; the court wrote further the following:

> By the time he was sufficiently aware of the basic allegations in the case, the store where the killings took place was again fully operational, and in [trial counsel's] view, it would have been sheer folly to have the pumps examined for fingerprints. The logic of [counsel's] conclusion is obvious, and the impracticality of [Simpson's] contention in this regard is equally obvious. Of equal importance, at the trial of this matter, the petitioner testified that [he and Harrison] did not get any gas from the pumps at the site of the murders.

As with the first point, the presence or absence of fingerprints on the gas pumps would not have changed the outcome of the trial. For one thing, if Simpson's prints *had* been found on the gas pumps, their presence would have contradicted his own testimony at trial, wherein he stated that he was putting air into the tires, not gasoline into the gas tank. This would only have hurt his *own* credibility. Additionally, if Harrison's prints had not been there, this would only have cast doubt on Harrison's testimony that he finished pumping gas after Simpson went inside the store; however, as discussed above, such credibility determinations lie solely with the jury, and there is no indication that the jury would have resolved this credibility determination in Simpson's favor.

Finally, trial counsel, Robert Jeffrey, testified at the Rule 37 hearing that he felt it would have been useless to check for fingerprints on the gas pumps, because the business had been re-opened for business prior to the time that he was appointed to represent Simpson. This court has held that the decision not to seek a given scientific test is a decision clearly within the realm of counsel's professional judgment and trial strategy, *see Helton v. State*, 325 Ark. 140, 924 S.W.2d 239 (1996), and of course, matters of trial strategy and tactics, even if arguably improvident, fall within the realm of counsel's professional judgment and are not grounds for a finding of ineffective assistance of counsel. *Noel v. State*, 342 Ark. 35, 26 S.W.3d 123 (2000). The failure of counsel to seek a particular test will not amount to a denial of effective assistance of counsel unless it can be concluded that the test was one which any competent attorney under the same circumstances would have sought. *Helton, supra.* Given the circumstances, it can hardly be said that any other attorney would have sought to test the gas pumps for fingerprints, because it was obvious that the pumps had since been exposed to the elements and an unknowable number of other people touching them. Therefore, Jeffery's failure to seek a fingerprint analysis of the pumps cannot have been ineffective assistance of counsel.

Affirmed.

ARNOLD, C.J., not participating.