Cite as 2016 Ark. 433

# SUPREME COURT OF ARKANSAS

No. CR-15-948

| | | |
|---|---|---|
| RANDY WILLIAM GAY | | **Opinion Delivered** December 8, 2016 |
| | APPELLANT | |
| V. | | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. CR-11-428-1] |
| STATE OF ARKANSAS | | HONORABLE JOHN HOMER |
| | APPELLEE | WRIGHT, JUDGE |
| | | AFFIRMED. |

**KAREN R. BAKER, Associate Justice**

On March 20, 2015, appellant, Randy William Gay, was convicted by a Garland County Circuit Court jury of one count of capital felony murder in the 2011 death of Connie Snow and sentenced to death. Gay appealed and presents seven issues on appeal: (1) the circuit court violated Gay's right to a fair and impartial trial by allowing Gay's entire "pen pack" to be submitted to the jury; (2) the circuit court erred by violating Gay's rights to due process by refusing to allow defense counsel to question potential jurors in depth regarding their views on the death penalty and mitigation; (3) the circuit court's inconsistent approach to rehabilitative questions to veniremen resulted in the improper removal of jurors for cause that denied Gay the right to a fair and impartial jury; (4) the circuit court erred in granting the State's motion for a mental-health evaluation of Gay over Gay's objection; (5) the circuit court erred by refusing to allow jury instructions AMI Crim. 2d 202 and AMI Crim. 2d 206, which were proffered by the defense; (6) the circuit court erred in denying the defense

SLIP OPINION

mitigator of "lingering doubt" in the penalty phase; and (7) the circuit court erred for refusing to allow Gay to introduce as a mitigating circumstance that Gay had a calming influence on others while in custody.

## I. *Facts*

Gay does not challenge the sufficiency of the evidence. Therefore, only a brief recitation of the facts is necessary. James Westlake testified he and his family operated a timber business in Garland County in 2011. James testified that he paid Gay "a few hundred dollars each week" to "keep an eye" on their equipment overnight. On May 10, 2011, James, Jim Westlake, and Rickey Stewart were attempting to repair machinery at their logging business in a wooded area of Garland County. Around 5 p.m. that day, Gay arrived in a pickup truck, and Snow was in the passenger seat. James testified that Gay exited the truck and ordered Snow out of the truck; Snow did not comply, and Gay went back to his truck and retrieved a shot gun and ordered Snow out of the truck. As Snow was attempting to exit the truck; Gay shot Snow in the right side of her face. The testimony demonstrates that James and Stewart both witnessed the shooting. James testified that Gay loaded Snow's body into the back of his truck and exited the property. Snow's body was recovered four days later in a shallow creek, and Gay was charged with capital murder. In 2013, Gay's first trial ended with a mistrial after the circuit court discovered that members of the jury had violated instructions by conducting independent research. Prior to the first trial, on a motion from the State and over an objection from Gay, the circuit court ordered a mental evaluation of Gay. The State retried Gay in March 2015 and on March 20, 2015, the jury convicted

SLIP OPINION

Gay, sentenced him to death, and this appeal followed.

## II. *Points on Appeal*

### A. Gay's "Pen Pack"

For his first point on appeal, Gay asserts the circuit court violated Gay's right to a fair and impartial trial by allowing Gay's entire "pen pack" to be submitted to the jury. During the sentencing phase, Gay introduced the "pen pack" that "spanned all periods of time that [Gay] had been incarcerated in the Arkansas Department of Correction. It consisted of approximately 300 pages and contained a large amount of information that was highly prejudicial to [Gay]." Gay contends that the "pen pack" should not have been introduced and considered by the jury and urges this court to reverse and remand this matter for a new trial.

At trial, during the sentencing phase, Gay called Shelly Hamilton, the classification administrator at the Department of Correction. Hamilton testified regarding Gay's two prior convictions for second-degree murder on two separate occasions, a felony conviction for felon in possession of a firearm, Gay's background, alleged parole violations, furloughs, and Minnesota Multi-phasic Personality Inventory test results. However, Gay elicited the testimony and introduced the "pen pack." Further, Gay did not object to the introduction of the "pen pack."

Here, "before considering the merits of this point on appeal, we must first determine whether the issue was properly preserved for appellate review. . . . It is well settled that arguments not raised at trial will not be addressed for the first time on appeal." *Ray v. State*,

2009 Ark. 521, at 3–4, 357 S.W.3d 872, 876 (internal citations omitted). Further, "Arkansas does not recognize plain error, i.e., an error not brought to the attention of the trial court by objection, but nonetheless affecting substantial rights of the defendant." *Green v. State*, 362 Ark. 459, 468, 209 S.W.3d 339, 344 (2005) (internal citations omitted). "It is well settled that a contemporaneous objection is required to preserve an issue for appeal, but this court has recognized four exceptions to the rule, known as the *Wicks* exceptions." *Springs v. State*, 368 Ark. 256, 260, 244 S.W.3d 683, 686 (2006); *Anderson v. State*, 353 Ark. 384, 108 S.W.3d 592 (2003). These exceptions occur when (1) a trial court, in a death-penalty case, fails to bring to the jury's attention a matter essential to its consideration of the death penalty itself; (2) a trial court errs at a time when defense counsel has no knowledge of the error and thus no opportunity to object; (3) a trial court should intervene on its own motion to correct a serious error; and (4) the admission or exclusion of evidence affects a defendant's substantial rights. *Springs*, 368 Ark. At 261, 244 S.W.3d at 686.

Here, Gay did not preserve the issue for review and has not asserted that the error falls within one of the exceptions in *Wicks*. Finally, we have repeatedly stated that a defendant cannot agree with a circuit court's ruling and then attack the ruling on appeal. *See, e.g.*, *Camargo v. State*, 346 Ark. 118, 55 S.W.3d 255 (2001); *Roberts v. State*, 352 Ark. 489, 504–05, 102 S.W.3d 482, 493 (2003). Based on the record before us, we do not find error with regard to the introduction of the pen pack and affirm the circuit court.

B. Questioning Potential Jurors Regarding the Death Penalty and Mitigation

For his second point on appeal, Gay contends that the circuit court violated Gay's due-

SLIP OPINION

process rights by refusing to allow Gay's counsel to question potential jurors in depth regarding their views on the death penalty and mitigation. Gay asserts that the circuit court restricted voir dire examination of potential jurors in two major areas: (1) the potential jurors' views on the death penalty and (2) mitigation. The State responds that the circuit court acted with sound discretion, and the circuit court repeatedly warned defense counsel that he was "fact qualifying" the potential jurors.

At issue is the voir dire examination of potential jurors. In *Isom v. State*, we explained our standard:

> The extent and scope of voir dire examination is within the sound discretion of the circuit judge, and the latitude of that discretion is wide. *See Henry v. State*, 309 Ark. 1, 828 S.W.2d 346 (1992). The judge's restriction of that examination will not be reversed on appeal unless that discretion is clearly abused. *Id.* Abuse of discretion occurs when the circuit judge acts arbitrarily or groundlessly. *See Walker v. State*, 304 Ark. 393, 803 S.W.2d 502 (1991).
>
> Arkansas Rules of Criminal Procedure provide the procedure for the conduct of proper voir dire in a criminal trial:
>
> > (a) Voir dire examination shall be conducted for the purpose of discovering bases for challenge for cause and for the purpose of gaining knowledge to enable the parties to intelligently exercise peremptory challenges. The judge shall initiate the voir dire examination by:
> >
> > (i) identifying the parties; and
> > (ii) identifying the respective counsel; and
> > (iii) revealing the names of those witnesses whose names have been made known to the court by the parties; and
> > (iv) briefly outlining the nature of the case.
> >
> > (b) The judge shall then put to the prospective jurors any question which he thinks necessary touching their qualifications to serve as jurors in the cause on trial. The judge shall also permit such additional questions by the defendant or his attorney and the prosecuting attorney as the judge deems reasonable and proper.

Ark. R.Crim. P. 32.2(a) and (b).

The fact that the Rules allow the circuit judge to permit such additional questioning as he or she deems proper underscores the discretion vested in the circuit judge.

*Isom*, 356 Ark. 156, 171–72, 148 S.W.3d 257, 267–68 (2004).

Here, Gay contends that the circuit court erred by not allowing voir dire for further questions into the veniremen's beliefs concerning the death penalty and mitigation and whether lack of premeditation was mitigation to an intentional murder. Gay further contends that the State was allowed to ask jurors questions regarding intoxication, which was mitigation evidence, and Gay was not able to ask questions regarding mitigation. Gay points to one specific instance in which he alleges that, when questioning Juror McLernon, he was unable to adequately explore the juror's views regarding the death penalty and was therefore not able to conduct a thorough voir dire. The State responds that the circuit court "even-handedly" applied the same discretion in limiting questions by the State and by Gay.

Gay briefly points to language in his questioning of McLernon. The following colloquy is the questioning Gay complains about:

| | |
|---|---|
| DEFENSE COUNSEL: | Besides the taking of a life, a homicide, do you feel that there are other circumstances where the death penalty should be applied? |
| . . . . | |
| MCLERNON: | I do not think so. |
| . . . . | |
| DEFENSE COUNSEL: | . . . Some people are of the belief, because of religion, the way that they were raised, what they've read, life experiences, I couldn't tell you what it would be, that if you take a life you should forfeit your life. Do you |

Cite as 2016 Ark. 433

believe that?

. . . .

| | |
|---|---|
| MCLERNON: | It depends on how bad of the situation.  Other than taking someone's life. |
| DEFENSE COUNSEL: | Okay.  Now if I understand what you said, how bad a situation beyond the taking of a life.  Is that what you said? |
| MCLERNON: | There's other circumstances that can make things a lot worse than just taking the life. |
| DEFENSE COUNSEL: | All right.  Taking that last statement, would you be able to look at any circumstances there were presented to you to convince you that the death penalty's not appropriate? |
| MCLERNON: | I'm still on the side of the death penalty, so I can't really answer that question. |
| DEFENSE COUNSEL: | And let me just tell you.  We're not allowed to give you examples and say – – |
| MCLERNON: | Oh, I know. I know. |
| DEFENSE COUNSEL: | – – if this is proven, would you do this. |
| MCLERNON: | I understand. |
| DEFENSE COUNSEL: | You know it's not like a  – – |
| MCLERNON: | I understand. |
| DEFENSE COUNSEL: | – – slot machine, where you put it in, pull the handle and get an answer. |
| MCLERNON: | I know. |
| DEFENSE COUNSEL: | So that's why we're talking in a vacuum. |
| MCLERNON: | I understand. |

7

Here, Gay asserts that he was unable to adequately explore Juror McLernon's view; but makes conclusory statements and does not develop this argument. However, based on the record discussed above, the record does not support Gay's argument. Further, we "do not consider an argument when the appellant presents no citation to authority or convincing argument in its support, and it is not apparent without further research that the argument is well taken." *Decay v. State*, 2009 Ark. 566, at 3–4, 352 S.W.3d 319, 324 (internal citations omitted). Further, based on our review of the record, Gay did not preserve this issue for review. Gay did not contemporaneously object to the voir dire or proffer questions he sought to ask the potential jurors.

Accordingly, based on our discussion above, we affirm the circuit court on Gay's second point.

C. Improper Removal of Jurors Based on the Circuit Court's Inconsistency

For his third point on appeal, Gay asserts that the circuit court erred when it employed an inconsistent approach to rehabilitative questions to veniremen, which resulted in the improper removal of jurors for cause that denied Gay the right to a fair and impartial jury. Further, Gay asserts that voir dire serves a critical function in assuring a fair trial and that the circuit court's uneven treatment regarding rehabilitation of jurors who favored the death penalty as opposed to those who had problems with the death penalty constitutes an abuse of discretion. Thus, Gay urges us to reverse and remand the matter for a new trial.

Here, Gay challenges rehabilitative questions by the circuit court to the following prospective jurors: Sandra Barker, Blanche Young, Elmer George, Samantha Brown, and

Carolyn Wetthington. Barker, Young, and Wetthington were struck by the defense with peremptory challenges. The prosecution struck George with a peremptory challenge. The record demonstrates that Gay did not object to the circuit court's questioning or treatment of these potential jurors that he now complains of in this appeal.

On the prosecution's motion, the circuit court excused Brown for cause. However, Gay did not object or preserve the issue for review. The record demonstrates that Gay did not object below after Brown had been struck. This court has repeatedly stated that we will not consider arguments raised for the first time on appeal. *See Phavixay v. State*, 2009 Ark. 452, 352 S.W.3d 311; *see Decay*, 2009 Ark. 566, at 7, 352 S.W.3d at 326.

Further, the record does not support Gay's argument. The extent and scope of voir dire examination is within the sound discretion of the circuit court judge, and the latitude of that discretion is wide. *Henry v. State*, 309 Ark. 1, 828 S.W.2d 346 (1992). The circuit court's restriction of that examination will not be reversed on appeal unless that discretion is clearly abused. *Id*. Abuse of discretion occurs when the circuit court acts arbitrarily or groundlessly. *See Walker v. State*, 304 Ark. 393, 803 S.W.2d 502 (1991). "This court has said that the proper test to be used in releasing a prospective juror for cause is whether the person's views would prevent or substantially impair the performance of his or her duties as a juror in accordance with his or her instructions and oath. *Williams v. State*, 288 Ark. 444, 705 S.W.2d 888 (1986). Because Arkansas recognizes the death penalty, jurors in a capital murder case must be able to consider imposing a death sentence if they are to perform their function as jurors. *Id*." *Isom*, 356 Ark. at 171-2, 148 S.W.3d at 267-68.

Here, when asked whether she could consider guilt or innocence of capital murder in the first phase of the trial without considering the death penalty, prospective juror Brown stated that she was hesitant about being able to separate guilt from punishment. Brown also stated that she did not want to make a decision about the death penalty, and "I've never thought an eye for an eye . . . thing." Gay has failed to assert error by the circuit court and makes conclusory allegations. Further, based on our review of the record, we are unpersuaded that the circuit court erred on this point, and we affirm the circuit court.

### D. Motion for Mental Examination

For his fourth point on appeal, Gay asserts that the circuit court erred in granting the State's motion for a mental examination of Gay pursuant to Ark. Code Ann. § 5-2-305(a)(1)(B) (Repl. 2013). Pursuant to Ark. Code Ann. § 5-2-305(a)(1)(B), which was in effect at the time of the motion, the circuit court may, on its own, suspend all proceedings and order a mental examination when there is "reason to believe" a mental disease or defect of the defendant has become an issue in the case. The State based its motion on the fact that Gay had previously been convicted of two murders, and in one of those cases, Gay put his fitness to proceed as an issue. Thus, the State contended that it anticipated Gay might put his mental condition at issue at some point, including sentencing, and the State was entitled to have Gay submit to a mental examination. Gay objected and asserted that if the motion was granted, the evaluation should be limited in scope; he also requested that counsel be present. On May 14, 2012, the circuit court entered an order allowing the examination, denied Gay's request for a limited exam and granted Gay's motion for counsel to be present on the

SLIP OPINION

premises.

Here, the record demonstrates that on August 14, 2012, psychologist Courtney A. Rocho met with Gay. However, Gay refused to participate. Further, the examination was not used against Gay. Although Gay asserts the circuit court erred, the examination was not introduced at trial. Because Gay's evaluation was never used at trial, he cannot demonstrate prejudice. *Hayes v. State*, 274 Ark. 440, 447, 625 S.W.2d 498, 502 (1981) ("We fail to perceive nor has appellant demonstrated how he was prejudiced by the non-use of these statements."); *see Simpson v. State*, 339 Ark. 467, 6 S.W.3d 104 (1999). Accordingly, we affirm the circuit court on Gay's fourth point.

## E. AMI Crim. 2d 202 and 206

For his fifth point on appeal, Gay asserts that the circuit court erred in refusing to give AMI Crim. 2d jury instructions 202 and 206. With regard to jury instructions, "a trial court's ruling on whether to submit a jury instruction will not be reversed absent an abuse of discretion. *Hill v. State*, 344 Ark. 216, 40 S.W.3d 751 (2001)." *Grillot v. State*, 353 Ark. 294, 318, 107 S.W.3d 136, 150 (2003).

Gay challenges two separate instructions. First, AMI Crim. 2d 202, Inconsistent Statements, provides,

> Evidence that a witness previously made a statement which is inconsistent with his testimony at the trial may be considered by you for the purpose of judging the credibility of the witness but may not be considered by you as evidence of the truth of the matter set forth in the statement.

At trial, Gay asserted that the instruction was applicable because witness Rickey Stewart had been inconsistent with his testimony and statement given to the FBI. The State

objected, and the circuit court refused to submit the instruction but allowed Gay to proffer the instruction. The following is the entire exchange regarding the instruction:

DEFENSE COUNSEL: I also submitted an inconsistent statement instruction.

THE COURT: 202?

DEFENSE COUNSEL: 202, I believe. . . . The only potential witness that I – – witness that this came up with was Mr. Stewart.

THE COURT: Okay.

DEFENSE COUNSEL: And it's – – like I said, he's the only – – I don't recall Ms. Nevels or Ms. – – is it McElroy?

THE COURT: And what were the inconsistent statements that Mr. Stewart made?

DEFENSE COUNSEL: Well, during cross I asked him about things he said to the FBI agent. There weren't many questions, but when he was being interviewed. And that's the only thing, 'cause Mr. Westlake, that wasn't the case. And then no one else – – everybody else would've been crime lab or police.

THE COURT: State object to that instruction being given?

PROSECUTOR: Yes, Your Honor. I don't believe that there was anything where [defense counsel] pointed out you said this differently in your statement. He might've asked about the statement but I don't think there was any inconsistencies that were pointed out.

DEFENSE COUNSEL: If you'll just show that proffered for the record on behalf of the Defendant, please.

THE COURT: I'll do that.

Here, Gay does not develop his argument but simply makes conclusory allegations. We "do not consider an argument when the appellant presents no citation to authority or

SLIP OPINION

convincing argument in its support, and it is not apparent without further research that the argument is well taken." *Decay*, 2009 Ark. 566, at 3–4, 352 S.W.3d at 324 (2009) (internal citations omitted). Further, based on the record, at trial, Gay did not identify the inconsistent statements supporting his request for the instruction or explain why the instruction should have been given. Accordingly, we do not find merit in Gay's argument and affirm the circuit court with regard to AMI Crim. 2d 202.

Second, Gay asserts that the circuit court erred in refusing to submit AMI Crim 2d. 206, Corroboration of Confession. Gay asserts that the circuit court mistakenly interpreted AMI Crim. 2d 206 to have a corroboration requirement. Gay contends that the circuit court should have given the instruction because Gay had provided a statement which the State introduced at trial, and the State referred to the statement in closing arguments.

AMI Crim. 2d 206 provides,

> A confession of a defendant, [unless made in open court], will not warrant a conviction unless accompanied with other proof that the offense was committed.

The circuit court refused to submit the instruction but allowed Gay to proffer it:

| | |
|---|---|
| DEFENSE COUNSEL: | I did submit a 206 because there was a statement given to the authorities that the State introduced into evidence. |
| . . . . | |
| THE COURT: | But this is a corroboration. But, you know, I don't think the statement ever admitted the crime. Well it was - - I think the - - well, I can't suggest the purpose, but from what - - the way I understood it was they put it in to show that he was not telling the truth. . . . But I mean, this is a corroboration instruction of a confession and I just - - |

13

DEFENSE COUNSEL:                    Well, I did it – – I did it 'cause I think it's – –

THE COURT:                         I'm gonna show this proffered too but I don't
                                   think I'm gonna give it . . . 'Cause I think it's
                                   gonna be confusing.

At trial, during closing arguments, the State referred to notes provided by Special

Agent Scott Falls of the FBI during his investigation when Gay was questioned about the

crime.  The State referred to Falls's notes where Falls stated that Gay had claimed Gay was

drunk and did not remember anything and also stating that he had spent the day in Mt. Pine.

Gay asserts that the State's closing argument was the "confession" and that the circuit court

should have submitted AMI Crim. 2d 206 to the jury.  The portion of the closing argument

he asserts merits the instruction being given is as follows:

> When you look at the statement that he gave, I submit to you, ladies and
> gentleman, that clearly shows that Randy Gay is not telling the truth about what he
> told the officers.  Let's go through that.
>
> In the statement he gave to Scott Falls, he first claims he's an alcoholic who
> suffers from blackout spells and passes out frequently.  Second, he has trouble recalling
> and cannot remember what he's done.  He states that on Tuesday, May 10th, 2011,
> he had bought some beer and whiskey and stopped at a friend's house at nine in the
> morning and stayed there 'til 8:15 that night drinking.  Ms. Nevels said that did not
> happen.  He showed up at 6:30 after the murder.
>
> At approximately 8:15, he left with a girlfriend and went to her residence.  He
> admits that he owns a white Chevy pickup with a silver toolbox.  He admits that he
> has a shotgun.  He admits that he works for James Westlike (sic).  He stated that he
> had knew – he knew Connie Snow, but had not seen her for about two years.  He
> denied having seen her for about two years.  He denied having seen her within the
> past few days.
>
> When accused by Special Agent Falls of shooting and killing her in front of
> witnesses, he alternates between "Uh, I was drunk and I can't remember" to
> maintaining that he had spent the day in Mountain Pine with the Nevels, which Ms.
> Nevels says he did not do.  And most heinously, when asked where he had hidden the

body after he left her, took the pickup and dumped her, he said "He couldn't help." "I don't remember anything and I can't report what I don't remember."

Here, the record demonstrates that the State made arguments regarding Gay's truthfulness in statements provided to law enforcement, but there was not a confession. The State argued, "When you look at the statement he gave, I submit to you, ladies and gentlemen, that clearly shows that Randy Gay is not telling the truth about what he told the officers." Accordingly, the statement or information was not used as a confession but questions to Gay's truthfulness. Further, the statement was made by the State during closing arguments and was not evidence submitted to the jury. The jury had been instructed that closing arguments are not evidence in the trial. Based on our standard of review and the record before us, we do not find error on this point and affirm the circuit court.

### F. "Lingering Doubt" Defense in Penalty Phase

For his sixth point on appeal, Gay asserts that the circuit court erred in denying his proffered jury instruction regarding "lingering doubt" as a mitigating-circumstance. Gay offered the following as a mitigating circumstance:

> There are lingering doubts as to Randy Gay's guilt as to the offense and as to eligibility for the death penalty. Even though these doubts may not rise to the level of 'reasonable doubt' under the instructions given during the penalty phase of trial.

During the penalty phase of the trial, Gay requested that the circuit court submit the instruction and the following colloquy occurred:

PROSECUTOR: That instruction does not go to anything about the Defendant. He is targeting the jurors in terms of saying even though you found the Defendant guilty of capital murder, this may not have been your verdict. I do not

15

think that is a true mitigator.

DEFENSE COUNSEL:  I would first point out that the jury can very easily check the box that "no member of the jury find that this is a mitigating circumstance that probably exists." Beyond that, if there is even a single juror that has any lingering doubt, it is absolutely a mitigator in the sense that it makes the death penalty inapplicable.

PROSECUTOR:  The issue is that, during that stage of the trial, they should not even be concerned about what the punishment will be later on. They were instructed not to do that and he is saying they have a lingering doubt.

THE COURT:  I am going to agree with the State on this. I am striking [it].

Gay asserts that the circuit court erred in denying this instruction. Gay urges us to revisit the holding in *Ruiz v. State*, 299 Ark. 144, 164, 772 S.W.2d 297, 308 (1989), where this court held that it was not error to reject a "lingering doubt" instruction. Gay also asserts that recent studies have shown that "lingering doubt" is the most significant factor in deciding whether a defendant will receive a life sentence.

In *Ruiz*, we held,

> The trial court refused an instruction proffered by the appellants which told the jury it could consider in mitigation any lingering doubt it might have as to appellants' guilt. It was not error to refuse this proposed instruction. *See Franklin v. Lynaugh,* 487 U.S. 164, . . . (1988); *Mitchell v. State*, 527 So. 2d 179 (Fla. 1988).

*Id*.; *see also Nooner v. State*, 2014 Ark. 296, at 58, 438 S.W.3d 233, 263 ("Mitigating circumstances are not limited to those in existence at the time of the capital murder but may include events that have occurred after the defendant's arrest or even during imprisonment pending a successful appeal from a death sentence. *Skipper v. South Carolina*, 476 U.S. 1

(1986), followed in *Pickens v. State*, 292 Ark. 362, 730 S.W.2d 230 (1987). The trial court is not required to instruct that a lingering doubt regarding guilt may be considered a mitigating circumstance. *Ruiz v. State*, 299 Ark. 144, 772 S.W.2d 297 (1989).).”

Here, based on the record before us, Gay does not provide a convincing argument that we should reconsider our holding in *Ruiz*, and we decline to revisit our holding in that case and affirm the circuit court.

### G. Calming Influence as a Mitigator

For his final point on appeal, Gay asserts that the circuit court erred in refusing to allow Gay to introduce as a mitigating circumstance that Gay had a calming influence on others while in custody. During the sentencing phase, Gay sought to submit the following mitigating circumstance to the jury:

| | |
|---|---|
| DEFENSE COUNSEL: | Randy Gay has had a calming influence with others while he has been in custody. |
| PROSECUTOR: | I have reviewed the . . . Defense exhibit on the records from the Department of Correction and I do not believe there is any document in that file that would indicate that and there's been no testimony from any of the Defense witnesses, from anyone he's been in custody with that he's had a calming effect upon anyone. |
| . . . . | |
| DEFENSE COUNSEL: | Judge, I think that the jury could reasonably infer that he's had a calming influence, just based on the absence of any disciplinary infraction in his correctional record. |
| THE COURT: | Okay, Again I agree with the State on that. |

Arkansas Code Annotated § 5-4-602(4), “[m]itigation evidence must be relevant to the issue of punishment.” *See also Simpson v. State*, 339 Ark. 467, 6 S.W.3d 104 (1999). We

have observed that Ark. Code Ann. § 5-4-602 does not totally open the door to any and all matters simply because they might conceivably relate to mitigation. *McGehee v. State*, 338 Ark. 152, 174, 992 S.W.2d 110, 123 (1999) (internal citations omitted). Relevant mitigating evidence is limited to evidence that "concerns the character or history of the offender or the circumstances of the offense." *Greene v. State*, 343 Ark. 526, 532–33, 37 S.W.3d 579, 584 (2001) (internal citations omitted).

Here, Gay did not introduce evidence that he had a calming influence on others but sought to submit the mitigating evidence based on an inference from Gay's lack of disciplinary record. However, Gay did not submit evidence to support this mitigating circumstance. Accordingly, we hold that the circuit court did not err in its refusal to submit the mitigation instruction regarding Gay's calming influence on others.

### III. *Rule 10 Review*

Finally, we note that under Rule 10 of the Arkansas Rules of Appellate Procedure–Criminal, the entire record has been reviewed, including those issues that were not properly preserved for appeal, and we hold that no reversible error exists. The record has also been reviewed under Arkansas Supreme Court Rule 4-3(i) (2016). No reversible error has been found.

Affirmed.

*Montgomery, Adams & Wyatt, PLC*, by: *Dale E. Adams*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Evelyn D. Gomez*, Ass't Att'y Gen., and *Adam Jackson*, Ass't Att'y Gen., for appellee.