Cite as 2024 Ark. 161

# SUPREME COURT OF ARKANSAS

No. CR–24–24

|  |  |  |
|---|---|---|
|  |  | **Opinion Delivered:** October 31, 2024 |
| JABARI SMITH | | |
| | APPELLANT | |
| | | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT [NO. 35CR–22–168] |
| V. | | |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE ALEX GUYNN, JUDGE |
| | | |
| | | AFFIRMED. |

**KAREN R. BAKER, Associate Justice**

On September 19, 2023, appellant Jabari Smith was found guilty of capital murder and a firearm enhancement by a Jefferson County Circuit Court jury. He was sentenced to life imprisonment plus fifteen years' imprisonment for the use of a firearm during the commission of the crime. Smith presents four arguments on appeal: (1) there was insufficient evidence for his capital-murder conviction because the evidence of any premeditated or deliberated purpose was insufficient; (2) the circuit court abused its discretion by admitting cumulative, unduly prejudicial photographs and video of the decedent; (3) the circuit court abused its discretion by restricting Smith's voir dire questions about the penalty phase of trial; and (4) the circuit court abused its discretion when it permitted the State to ask Smith if Efrem Elliot had lied in his testimony. We affirm.

This appeal stems from the shooting death of fifteen-year-old Siar Grigsby on February 2, 2022. On March 11, 2022, Smith was charged with capital murder, aggravated robbery, and a firearm enhancement.[1] On September 18–19, 2023, a jury trial was held. Prior to trial, Smith moved to exclude photographs from Grigsby's autopsy and the crime scene as well as a surveillance video from a nearby church that captured the shooting. Smith contended that the photographs and the video were gruesome and had no probative value. The circuit court denied Smith's request to exclude the photographs and the video.

At trial, Efrem Elliot testified that on the day of the shooting, he drove Smith, Grigsby, and Malik Shorter from Little Rock to Smith's home in Pine Bluff. Elliot testified that when he pulled up to Smith's home, Grigsby, Smith, and Shorter exited the vehicle. Elliot testified that he remained in the vehicle and immediately heard gunshots. Elliot testified that he did not know if Smith and Shorter were carrying guns but that he knew Grigsby had a gun because he saw it on Grigsby's waist. However, Elliott did not hear Grigsby threaten anyone either the day before or when the four of them were together in his vehicle.

The video capturing the shooting was played during Elliot's testimony. Elliot confirmed that the video depicted him pulling into Smith's driveway. Grigsby was the first to exit the vehicle, and he began walking toward the house. Smith followed Grigsby and immediately began shooting him from behind. Grigsby fell to the ground. Elliot identified Smith as the person in the video standing over Grigsby's body and continuing to shoot him even after he had fallen to the ground. Elliot identified Shorter as the next individual to run

___

[1] The State nolle prossed the aggravated-robbery charge.

2

over and began firing additional shots into Grigsby's body. Elliot was then seen backing out of the driveway and leaving the scene.

After the shooting, Smith called 911. Smith's description of events during his 911 call differed from what was recorded in the surveillance video. Smith told the 911 dispatcher that while he was outside with his friends, someone drove by in a white pickup truck and fired shots at the group. Smith was able to escape, but one of his friends had been shot and was lying in the driveway.

Officer Kirsten Pennington with the Pine Bluff Police Department testified that she responded to the 911 call around 9:30 p.m. When she arrived, a young male was outside yelling that his friend had been shot. Officer Pennington testified that she located the victim lying in the carport area, and he was unresponsive with several visible gunshot wounds.

Officer MD Shariyar, a crime scene technician for the Pine Bluff Police Department, testified that he was called out to the scene of the homicide at approximately 9:45 p.m. Officer Shariyar testified that he collected thirty-five spent shell casings from the carport and the front of the house.

Detective Jason Boykin with the Pine Bluff Police Department testified that while he was on the scene of the homicide, Smith returned. Smith explained that he was present for the shooting and that he wanted to give a statement about being a victim. Smith's statement was played for the jury. In his statement, Smith's recollection of events was different from what he had described in his 911 phone call. Smith explained that while he and his friends were under the carport, he noticed a white truck parked on the road. A masked man then emerged from the truck and began shooting at the group.

In the course of his investigation, Detective Boykin recovered the surveillance video from the church. Detective Boykin testified that when he viewed the video, he realized that Smith was wearing the same clothes that he wore when he gave his statement to police.

Dr. Christy Cunningham, an associate medical examiner at the Arkansas State Crime Laboratory, conducted Grigsby's autopsy. She testified that Grigsby's cause of death was multiple gunshot wounds. Dr. Cunningham testified that Grigsby had fourteen distinct gunshot wounds and numerous shrapnel injuries that were caused by bullets striking the wall or the ground and fragmenting before striking him. The autopsy photographs shown to the jury included a picture of a bullet entry wound on the back of Grigsby's neck and a bullet exit wound on his cheek.

Jennifer Floyd, a firearm and tool mark examiner at the Arkansas State Crime Laboratory, examined the bullets, casings, and fragments recovered from the crime scene and from Grigsby's body and determined the bullets were fired from two different firearms.

Testifying on his own behalf, Smith stated that on the day of the shooting, he and Grigsby had been robbed. Smith testified that after being robbed, Grigsby began "acting crazy and stuff." Smith testified that Grigsby was doing outrageous things like pointing guns in people's faces and "clutching the gun" at Shorter. Smith testified that Grigsby and Shorter began arguing in the back seat. Smith claimed that he told Grigsby to "please stop clutching his gun at [Shorter] and . . . to chill out." According to Smith, Grigsby got mad at him and put the gun to Smith's head and told him he would blow his head off. Smith testified that Grigsby also made threats to Smith's family. Smith testified that Grigsby got out of the vehicle with his gun and started walking toward Smith's house. Smith admitted that he had

4

shot Grigsby. However, he explained that he had shot Grigsby because he was concerned for his younger siblings and the others inside his house.

Smith was convicted and sentenced as set forth above. This timely appeal followed.

I. *Points on Appeal*

A. Sufficiency of the Evidence

For his first point on appeal, Smith argues that there was insufficient evidence for his capital-murder conviction because the evidence of any premeditated or deliberated purpose was insufficient.

In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Edmond v. State*, 351 Ark. 495, 95 S.W.3d 789 (2003). We will affirm a conviction if there is substantial evidence to support it. *Id*. Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Dortch v. State*, 2018 Ark. 135, at 5, 544 S.W.3d 518, 522. This court does not weigh the evidence presented at trial or assess the credibility of the witnesses because those are matters for the fact-finder. *Drennan v. State*, 2018 Ark. 328, at 6, 559 S.W.3d 262, 266. The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id*. Further, circumstantial evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Edmond*, 351 Ark. 495, 95 S.W.3d 789. Whether the evidence

excludes every other hypothesis is left to the jury to decide. *Carmichael v. State*, 340 Ark. 598, 12 S.W.3d 225 (2000).

With these standards in mind, we turn to Smith's first point on appeal. Smith was convicted of capital murder. Pursuant to Arkansas Code Annotated section 5-10-101, a person commits capital murder if, "[w]ith the premeditated and deliberated purpose of causing the death of another person, the person causes the death of any person[.]" Ark. Code Ann. § 5-10-101(a)(4) (Supp. 2023) (effective until Jan. 1, 2024). Premeditated and deliberated murder occurs when the killer's conscious object is to cause death, and he forms that intention before he acts and as a result of a weighing of the consequences of his course of conduct. *Carmichael*, 340 Ark. at 602, 12 S.W.3d at 228. Premeditation is not required to exist for a particular length of time. *Id*. It may be formed in an instant and is rarely capable of proof by direct evidence but must usually be inferred from the circumstances of the crime. *Id*. A jury can infer premeditation and deliberation from circumstantial evidence, such as the type and character of the weapon used; the nature, extent, and location of wounds inflicted; and the conduct of the accused. *Brooks v. State*, 2016 Ark. 305, at 6, 498 S.W.3d 292, 296. Further, "[c]ausation may be found when the result would not have occurred but for the conduct of the defendant operating either alone or concurrently with another cause unless: (1) [t]he concurrent cause was clearly sufficient to produce the result; and (2) [t]he conduct of the defendant was clearly insufficient to produce the result." Ark. Code Ann. § 5-2-205 (Repl. 2013).

Smith's challenge to the sufficiency of the evidence supporting his capital-murder conviction focuses on an alleged lack of evidence of any premeditated or deliberated

6

purpose. Instead, he contends that the evidence showed that he acted on sudden impulse without the exercise of reasoning powers. He asserts that there was no evidence that he had any purpose to kill prior to the moment of the shooting and that there was no evidence that he had talked about, killed, or threatened to kill Grigsby prior to his death. The State responds that the jury could infer premeditation and deliberation necessary for capital murder from the nature and the extent of Grigsby's wounds alone. We agree.

Here, the surveillance video showed that, while following Grigsby, Smith shot him multiple times from behind and continued to shoot him even after he collapsed. As Dr. Cunningham testified, Grigsby had fourteen gunshot wounds and numerous shrapnel injuries. As to Smith's argument that there was no evidence that he had any purpose to kill prior to the moment of the shooting, as stated above, premeditation can be formed in an instant. *Carmichael*, *supra*. As to Smith's assertion that he acted on sudden impulse without the exercise of reasoning powers, it was for the jury to accept or reject Smith's testimony. We have said that the jury is not required to believe a defendant's self-serving testimony. *Brown v. State*, 374 Ark. 341, 344, 288 S.W.3d 226, 230 (2008).

Further, we note Smith's actions after the murder. Efforts to conceal a crime, as well as being untruthful to police about one's involvement in a killing, can be considered evidence of consciousness of guilt. *Williams v. State*, 2015 Ark. 316, 468 S.W.3d 776. Here, Smith called 911 immediately after the murder and told the dispatcher that his friends were victims of a drive-by shooting. He further attempted to conceal his crime when he lied in his statement to police by stating that a masked man shot at the group.

On the basis of the above evidence, we conclude that there was sufficient evidence that Smith acted with premeditation and deliberation to cause Grigsby's death. The jury could reasonably have inferred from the testimony, the type of weapon used, the manner of its use, and Grigsby's multiple gunshot wounds that Smith purposely, with premeditation and deliberation, killed Grigsby. Thus, in considering the facts in the light most favorable to the State, we hold that substantial evidence supports Smith's capital–murder conviction.

## B. Autopsy Photographs and Video

For his second point on appeal, Smith argues that the circuit court abused its discretion by admitting cumulative, unduly prejudicial autopsy photographs and video of the victim.

Video evidence is admissible if it is relevant, helpful to the jury, and not prejudicial. *Lard v. State*, 2014 Ark. 1, at 20, 431 S.W.3d 249, 264. The same requirements for the admission of photographs apply to the admission of video evidence. *Id*. We have held that the admission of photographs is a matter left to the sound discretion of the circuit court, and we will not reverse absent an abuse of that discretion. *Breeden v. State*, 2013 Ark. 145, 427 S.W.3d. 5. When photographs are helpful to explain testimony, they are ordinarily admissible. *Blanchard v. State*, 2009 Ark. 335, 321 S.W.3d 250. Moreover, the mere fact that a photograph is inflammatory or is cumulative is not, standing alone, sufficient reason to exclude it. *Id*. Even the most gruesome photographs may be admissible if they assist the trier of fact in any of the following ways: by shedding light on some issue, by proving a necessary element of the case, by enabling a witness to testify more effectively, by corroborating testimony, or by enabling jurors to better understand the testimony. *Id*.

8

### i. *Autopsy photographs*

Smith takes issue with the State's introduction of fourteen photographs of Grigsby from his autopsy. Smith contends that many of the photographs showed the same wounds as the other photographs—just from a slightly different angle. Smith argues that there was no dispute as to Grigsby's manner of death or the number of times he was shot. He argues that these photographs thus served no valid purpose and could only be used to inflame the jurors' passions and should have been excluded. Here, however, the photographs were helpful to explain Dr. Cunningham's testimony. The fact that they were cumulative is not a sufficient reason to exclude them. Further, "merely cumulative evidence" is not prejudicial, and the State is entitled to prove its case as conclusively as possible. *Reid v. State*, 2019 Ark. 363, at 9, 588 S.W.3d 725, 732. Accordingly, the circuit court did not abuse its discretion in admitting the photographs.

### ii. *Video*

Next, Smith argues that the video was both cumulative and unduly prejudicial. He asserts that the State had already offered testimony about what the video showed and that any marginal relevance the video may have had was grossly outweighed by the danger of unfair prejudice. Here, the video was helpful because it explained the sequence of events and corroborated Elliot's testimony. With regard to Smith's argument that the video was cumulative, again, "merely cumulative evidence" is not prejudicial. *Reid v. State, supra.* Accordingly, the circuit court did not abuse its discretion in admitting the video.

### C. Voir Dire

For his third point on appeal, Smith argues that the circuit court abused its discretion by refusing to permit Smith to question the potential jurors about the range of punishment associated with his charges.

The extent and scope of voir dire examination is within the sound discretion of the circuit court, and the latitude of that discretion is wide. *Gay v. State*, 2016 Ark. 433, at 9, 506 S.W.3d 851, 858. The circuit court's restriction of that examination will not be reversed on appeal unless that discretion is clearly abused. *Id*. Abuse of discretion occurs when the circuit court acts arbitrarily or groundlessly. *Id*. Rule 32.2 of the Arkansas Rules of Criminal Procedure provides for voir dire examination of potential jurors and specifically grants the circuit judge the power to "permit such additional questions by the defendant or his attorney and the prosecuting attorney as the judge deems reasonable and proper." The purpose of voir dire is to discover if there is any basis for a challenge for cause and to gain knowledge for the intelligent exercise of peremptory challenges. *Goff v. State*, 341 Ark. 567, 574, 19 S.W.3d 579, 584 (2000). The proper role of a circuit judge in voir dire is to direct the process, and he or she is given great discretion to ensure that no undue advantage is gained. *Id*.

During voir dire, the State asked the potential jurors whether they could "consider the full range of punishment for whatever the law is under that particular statute[.]" Next, defense counsel addressed the potential jurors as follows:

[DEFENSE COUNSEL]:        All right. My colleague talked about this being a capital case. Okay. And she asked you could you consider the full range of punishment, right? So here's how these cases work. You have a capital allegation. He's charged with capital murder, all right? And along the way, when the Judge gives you instructions, he may give you

10

instructions that are for murder one, and for murder two, all right? Could be. I don't know. We'll get there. But I want you to understand if -- or ask if you can consider the range of punishment, and I need to tell you what the range of punishment is, so that you know what the range of punishment is, to find out [i]f you can consider it. All right. So the range of punishment on a capital case is two things.

The State immediately objected to Smith's questioning of the potential jurors regarding the range of punishment. The circuit court agreed and sustained the State's objection.

To support his position that the circuit court abused its discretion, Smith relies on *Dillard v. State*, 363 Ark. 491, 215 S.W.3d 662 (2005). In *Dillard*, the defense counsel asked the prospective jurors whether anyone was "uncomfortable with the penalty range being 10 to 40 years, or life" in prison. The State objected. The circuit court sustained the State's objection and stated that counsel could only ask whether "they can consider the full range of penalty. You cannot tell them what it is." *Id.* at 493, 215 S.W.3d at 664. We held that the circuit court abused its discretion because defense counsel's question sought to determine "whether the jurors could consider the term of years for aggravated robbery provided by law." *Id.* at 495, 215 S.W.3d at 665. Smith argues that, like the circuit court in *Dillard*, the circuit court here abused its discretion by restricting defense counsel's inquiry about whether the potential jurors were comfortable with the sentencing options for the charged acts.

The distinction here is that because the State waived the death penalty, Smith was not subject to a range of punishment for capital murder. Stated differently, once convicted of capital murder, Smith's mandatory sentence was life imprisonment without parole. Although disputed by Smith, we agree with the State's assertion that Smith's line of

questioning appeared to be his attempt to make the jury aware that it could avoid this mandatory sentence of life imprisonment without parole by convicting him of first-degree murder as opposed to capital murder. Again, restriction of voir dire examination is within the sound discretion of the circuit court and the latitude of that discretion is wide. *Gay*, *supra*. Under these circumstances, we cannot say that the circuit court abused its discretion here, and we affirm.

## D. Cross-Examination

For his final point on appeal, Smith argues that the circuit court abused its discretion when it permitted the State to ask Smith whether Efrem Elliot lied in his testimony. We review matters concerning the scope of cross-examination under an abuse-of-discretion standard. *Rodgers v. State*, 360 Ark. 24, 27, 199 S.W.3d 625, 627 (2004). We have stated that cross-examination is an important tool in bringing the facts before the jury and that wide latitude should be afforded by the circuit court. *Id.*

Specifically, Smith argues that the circuit court improperly overruled his objection to the State's cross-examination about whether Elliot had lied in his testimony by not mentioning Grigsby's gun. Smith contends that this was improper because it forced Smith to testify about something he did not know—whether Elliot had been lying during his earlier testimony.

As the State points out, this argument mischaracterizes the State's line of questioning. On direct examination, Smith testified that, prior to getting out of the car, Grigsby put a gun to Smith's head and told him that he would blow his head off and threatened to hurt him and his family. The cross-examination at issue is as follows:

| [PROSECUTOR]: | Mr. Smith, you were in here when Efrem Ell[iot] testified, right? |
|---|---|
| [SMITH]: | Yes, ma'am. |
| [PROSECUTOR]: | And you have been friends basically all your life with Efrem, is that right? |
| [SMITH]: | Yes, ma'am. |
| [PROSECUTOR]: | And so now you are telling us, you are telling this jury that you are with Efrem in his car and [Grigsby] pulls a gun in your face in the parking lot and Efrem didn't even mention that in his testimony? |
| [DEFENSE COUNSEL]: | Objection. He doesn't know what Mr. Elliot would or could have said. He has no reason to know why he would lie or not lie. It calls for speculation. |
| [PROSECUTOR]: | No, Your Honor, he was here during that testimony. |
| [DEFENSE COUNSEL]: | He still doesn't know what is in his mind. |
| [PROSECUTOR]: | That is not what I asked him. |
| THE COURT: | Overruled[.] |
| . . . | |
| [PROSECUTOR]: | Did you hear Efrem say anything about that during his testimony? |
| [SMITH]: | No, Ma'am. |

A review of the above colloquy demonstrates that the State was not questioning Smith about whether Elliot had lied during his testimony by not mentioning Grigsby's gun. Instead, the State was focused on Smith's credibility. Considering the differences between Smith's testimony and Elliot's testimony about whether Grigsby had put a gun to Smith's head, the State's decision to question Smith about this discrepancy was well within the scope

13

of cross-examination.  Accordingly, we cannot say that the circuit court abused its discretion on this point.

## II. *Rule 4-3(a) Review*

Pursuant to Arkansas Supreme Court Rule 4–3(a), the record has been reviewed for all objections, motions, and requests that were decided adversely to Smith, and no prejudicial error was found.

Affirmed.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Rebecca Kane*, Ass't Att'y Gen., for appellee.